TYSON, Judge.
*94 The North Carolina Department of Public Safety ("Respondent") appeals from a final decision of the North Carolina Office of Administrative Hearings, which concluded as a matter of law that Respondent lacked just cause to terminate Steven Harris ("Petitioner") from his position as a correctional officer, and ordering his reinstatement. We affirm the decision of the administrative law judge.
I. Background
Petitioner began working in February 2013 as a correctional officer at Maury Correctional Institution ("Maury Correctional"), a state prison operated by Respondent. Petitioner attended Respondent's basic training program and continued to be trained annually regarding Respondent's policies and procedures, including its Use of Force policy.
*95 Petitioner's personnel record contained no disciplinary action prior to the incident at issue.
Petitioner was working the night shift at Maury Correctional on 5 February 2015. He was working in the "Gray Unit," which housed the prison's segregation cell block. Inmate Christopher Walls ("Walls") was housed on the Gray Unit. Walls placed his feces into a plastic bag and placed the bag *130 into the toilet, which caused water to leak onto the floor. Walls then poured the feces onto the floor. In response to Walls' actions, Sergeant Vernell Grantham ordered Ronnie Johnson ("Officer Johnson"), Devon Alexander ("Officer Alexander"), and Dominique Sherman ("Officer Sherman") (together "the officers") to remove Walls from his cell to allow a janitor to clean up the feces and extinguish the stench.
The officers restrained Walls with handcuffs behind his back, a waist chain, and leg cuffs. Petitioner was not tasked with transporting Walls from his cell to another location. Officers Johnson, Alexander, and Sherman testified Petitioner approached Walls, stated to him: "You think this is funny" and punched Walls in the stomach. Walls was physically restrained, compliant, and under the other officers' control at the time Petitioner punched Walls. The officers each testified that Walls did not attempt to spit on Petitioner and was not offering any resistance at the time Petitioner punched him. While the Gray Unit is equipped with several security cameras, the incident was not captured, because it occurred in a blind spot inside the facility. Officer Johnson became upset and informed Petitioner that he was going to report him for punching the inmate.
Walls, the inmate, stated to Sergeant Grantham, "Y'all hit like bitches." Less than thirty minutes after the incident occurred, Walls was taken to and screened by medical personnel, who observed no bruising or redness on his abdomen. At no point in time did Walls complain that Petitioner had struck him or abused him in any way.
After the incident was reported, Respondent conducted an internal investigation, concluded Petitioner had violated Respondent's Use of Force policy, and recommended corrective action. Petitioner received a written notice, dated 14 April 2015, of a pre-disciplinary conference with Administrator Dennis Daniels and Administrative Services Manager Gary Parks, to be held the following day. The written notice stated the conference was to discuss a recommendation for Respondent to terminate Petitioner from his position for "unacceptable personal conduct." Petitioner was provided with the reasons his termination was recommended and was given an opportunity to respond to the allegations.
*96 Following the conference, Respondent's management approved the recommendation to terminate Petitioner's employment. Petitioner was notified by letter dated 17 April 2015 that his employment was terminated for unacceptable personal conduct. Petitioner filed an appeal with the Employee Advisory Committee, which recommended Petitioner's dismissal be upheld. Respondent notified Petitioner by letter dated 29 June 2015 of its final agency decision upholding Petitioner's dismissal.
Petitioner filed a petition for a contested case hearing with the Office of Administrative Hearings ("OAH"). The case was heard before an Administrative Law Judge ("the ALJ") on 23 October 2015. Following that hearing, the ALJ issued a final decision on 25 January 2016. The final decision contained twenty-seven findings of fact. Utilizing the framework established by our Supreme Court in N.C. Dep't of Env't & Natural Res. v. Carroll , 358 N.C. 649, 599 S.E.2d 888 (2004) and by this Court in Warren v. N.C. Dep't of Crime Control , 221 N.C. App 376, 726 S.E.2d 920, disc. review denied , 366 N.C. 408, 735 S.E.2d 175 (2012), the ALJ concluded as a matter of law that "[t]o the extent ... Petitioner's conduct [punching Walls in his stomach] constituted unacceptable personal conduct, it does not rise to the level of conduct that would justify the severest sanction of dismissal under the totality of facts and circumstances of this contested case" and that "[i]t is not 'just' to terminate Petitioner[.]"
The ALJ reversed Respondent's decision to terminate Petitioner's employment, ordered Petitioner to be retroactively reinstated to his position of employment, and ordered a deduction from Petitioner's pay, equivalent to a one-week suspension. Respondent appeals.
II. Jurisdiction
Pursuant to N.C. Gen. Stat. § 7A-29(a) (2015), an appeal as of right lies directly to this Court from a final decision of the Office of Administrative Hearings under *131 G.S. 126-34.02. Respondent's appeal is properly before us.
III. Issues
Respondent argues: (1) the ALJ erred as a matter of law by concluding Respondent failed to establish just cause to dismiss Petitioner for unacceptable personal conduct; (2) the ALJ erred as a matter of law by substituting his own judgment for that of Respondent and imposing new discipline upon Petitioner; (3) certain findings of fact and conclusion of law of the ALJ are not supported by substantial evidence, are unsupported by the findings of fact, or are affected by an error of law; and, (4) the ALJ erred as a matter of law by excluding evidence that was not specifically mentioned in Respondent's dismissal letter to Petitioner.
*97 IV. Just Cause for Dismissal
Respondent argues the ALJ erred by concluding Respondent failed to establish just cause for Petitioner's dismissal. We disagree.
A. Statutory Scheme and Standard of Review for Determining Just Cause
In 2013, our General Assembly significantly amended and streamlined the procedure governing state employee grievances and contested case hearings, applicable to cases commencing on or after 21 August 2013. See generally 2013 N.C. Sess. Laws ch. 382. Our Supreme Court explained the previous statutory framework in detail in Carroll , 358 N.C. at 657-58, 599 S.E.2d at 893-94.
A career state employee who alleged he was dismissed, demoted, or suspended without pay without just cause under N.C. Gen. Stat. § 126-35 was first required to "pursue any grievance procedures established by the employing agency or department." Id . at 657, 599 S.E.2d at 893 (citations omitted). Once those internal grievance procedures were exhausted, the aggrieved employee could demand a formal, quasi-judicial evidentiary hearing before an ALJ by filing a contested case petition with the Office of Administrative Hearings. Id . The ALJ issued a "recommended decision," and each party was entitled to pursue an administrative appeal by filing exceptions and written arguments with the State Personnel Commission ("SPC"). Id . at 657, 599 S.E.2d at 893-94.
The SPC issued its final agency decision based on its "review of the parties' arguments and the materials preserved in the official record[.]" Id. at 658, 599 S.E.2d at 894. The SPC was authorized "to reinstate a wrongfully terminated employee and to order a salary adjustment or other suitable action to correct an improper disciplinary action." Id . (citation omitted). The SPC's decision was subject to judicial review upon the petition of either the employee or the employing agency in the superior court. Id . (citation omitted). The superior court's decision was subject to further review in the appellate division. Id . (citation omitted).
As part of the 2013 amendments, the General Assembly enacted N.C. Gen. Stat. §§ 126-34.01 and 126-34.02 into the North Carolina Human Resources Act. Under N.C. Gen. Stat. § 126-34.01 (2015), a State employee "having a grievance arising out of or due to the employee's employment" must first discuss the matter with the employee's supervisor, and then follow a grievance procedure approved by the North Carolina Human Resources Commission. The agency will issue a final decision, approved by the Office of State Human Resources. Id.
*98 While a final agency decision under the previous statutory framework included formal findings of fact and conclusions of law, a final agency decision under the current framework simply "set[s] forth the specific acts or omissions that are the basis of the employee's dismissal." 25 NCAC 01J .0613(4)(h) (2016).
Once a final agency decision is issued, a potential, current, or former State employee may appeal an adverse employment action as a contested case pursuant to the method provided in N.C. Gen. Stat. § 126-34.02 (2015). As relevant to the present case, N.C. Gen. Stat. § 126-34.02(a) provides:
(a) [A] former State employee may file a contested case in the Office of Administrative Hearings under Article 3 of Chapter 150B of the General Statutes.... In deciding cases under this section, the [ALJ] may grant the following relief:
*132 (1) Reinstate any employee to the position from which the employee has been removed.
(2) Order the employment, promotion, transfer, or salary adjustment of any individual to whom it has been wrongfully denied.
(3) Direct other suitable action to correct the abuse which may include the requirement of payment for any loss of salary which has resulted from the improper action of the appointing authority.
One of the issues, which may be heard as a contested case under this statute, is whether just cause existed for dismissal, demotion, or suspension. As here, "[a] career State employee may allege that he or she was dismissed, demoted, or suspended for disciplinary reasons without just cause." N.C. Gen. Stat. § 126-34.02(b)(3). In such cases, "the burden of showing that a career State employee was discharged, demoted, or suspended for just cause rests with the employer." N.C. Gen. Stat. § 126-34.02(d). In a contested case, an "aggrieved party" is entitled to judicial review of a final decision of an administrative law judge [ALJ] by appeal directly to this Court. N.C. Gen. Stat. § 126-34.02(a) ; N.C. Gen. Stat. § 7A-29(a).
While Chapter 126 is silent on the issue, Chapter 150B, the Administrative Procedure Act, specifically governs the scope and standard of this Court's review of an administrative agency's final decision. See *99 Overcash v. N.C. Dep't of Env't & Natural Res. , 179 N.C.App. 697, 702, 635 S.E.2d 442, 446 (2006), disc. review denied , 361 N.C. 220, 642 S.E.2d 445 (2007). Article 4 of Chapter 150B is entitled "Judicial Review," and includes N.C. Gen. Stat. § 150B-43 :
[a]ny ... person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the ... person aggrieved by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute .
N.C. Gen. Stat. § 150B-43 (2015) (emphasis supplied).
Chapter 150B also includes Section 51, which is entitled "Scope and standard of review." N.C. Gen. Stat. § 150B-51 (2015). The statute provides:
The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary, capricious, or an abuse of discretion.
Id .
The standard of review is dictated by the substantive nature of each assignment of error. N.C. Gen. Stat. § 150B-51(c) ; Carroll , 358 N.C. at 658, 599 S.E.2d at 894. "It is well settled that in cases appealed from administrative tribunals, questions of law receive de novo review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole-record test." Carroll , 358 N.C. at 659, 599 S.E.2d at 894-95 (brackets, quotation marks and citation omitted). The court engages in de novo review when the error asserted is within § 150B-51(b)(1), (2), (3), or (4).
*100 N.C. Gen. Stat. § 150B-51(c). "Under the de novo standard of review, the trial court considers the matter anew and freely substitutes its own judgment for the agency's." Overcash , 179 N.C.App. at 703, 635 S.E.2d at 446 (brackets, quotation marks, and citation omitted).
On the other hand, when the error asserted is within N.C. Gen. Stat. § 150B-51(b)(5) & (6), the reviewing court applies the "whole record standard of review."
*133 N.C. Gen. Stat. § 150B-51(c). Under the whole record test,
[The court] may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter de novo . Rather, a court must examine all the record evidence-that which detracts from the agency's findings and conclusions as well as that which tends to support them-to determine whether there is substantial evidence to justify the agency's decision. Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion.
Carroll , 358 N.C. at 660, 599 S.E.2d at 895 (internal citations and quotation marks omitted).
We undertake this review with a high degree of deference because it is well established that
"[i]n an administrative proceeding, it is the prerogative and duty of [the ALJ], once all the evidence has been presented and considered, to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence. The credibility of witnesses and the probative value of particular testimony are for the [ALJ] to determine, and [the ALJ] may accept or reject in whole or part the testimony of any witness."
N.C. Dep't of Pub. Safety v. Ledford , --- N.C. App. ----, ----, 786 S.E.2d 50, 64 (2016) (quoting City of Rockingham v. N.C. Dep't of Env't. & Natural Res. , 224 N.C.App. 228, 239, 736 S.E.2d 764, 771 (2012) ), review allowed , 369 N.C. 40, 792 S.E.2d 152 (2016).
"[O]ur Supreme Court has made [it] clear that even under our de novo standard, a court reviewing a question of law in a contested case is without authority to make new findings of fact." Id. at ----, 786 S.E.2d 50, 63-64 (2016) (citing Carroll , 358 N.C. at 662, 599 S.E.2d at 896 ).
*101 In a contested case under the APA, as in a legal proceeding initiated in District or Superior Court, there is but one fact-finding hearing of record when witness demeanor may be directly observed. Thus, the ALJ who conducts a contested case hearing possesses those institutional advantages that make it appropriate for a reviewing court to defer to his or her findings of fact.
Carroll , 358 N.C. at 662, 599 S.E.2d at 896 (internal citations and quotations marks omitted).
Our separately writing colleague asserts the provisions of Chapter 150B are inapplicable because of N.C. Gen. Stat. § 150B-43, which states a person is entitled to judicial review of the final decision under Chapter 150B "unless adequate procedure for judicial review is provided by another statute, in which case the review shall be under such other statute." N.C. Gen. Stat. § 150B-43 (2015). The separate opinion asserts N.C. Gen. Stat. § 126-34.02 is "another statute," which provides "an adequate procedure for judicial review." We disagree.
The provisions of Chapters 126 and 150B are not inconsistent. N.C. Gen. Stat. § 126-34.02 simply provides the employee's procedure to file a contested case, the issues the employee may bring before the ALJ, the types of relief the ALJ may impose, and the right to appeal directly to this Court from the ALJ's final decision. The scope and standard of review of this Court's review of the ALJ's final decision is expressly set forth in § 150B-51. Chapter 126 is silent on this issue. While Chapter 126 governs the proceeding before the ALJ and provides the aggrieved party the right to appeal to this Court, Chapter 150B sets forth our standard of review, which is the same standard of review that has been consistently applied by our appellate courts and is not contested by our separately writing colleague.
We perceive no intent, through the 2013 changes to this procedural framework, to alter the applicable standard of review. Consistent with the Administrative Procedure Act, the ALJ makes "a final decision or order that contains findings of fact and conclusions of law" in each contested case. N.C. Gen. Stat. § 150B-34(a). Respondent argues the ALJ must give deference to the agency in *134 determining whether just cause exists for the agency's action.
Respondent's assertion is directly contrary to the express statutory burden established by the General Assembly for contested case hearings of this nature. Given that the statute explicitly places the burden of proof on the agency to show just cause exists for the discharge, demotion, or *102 suspension of a career State employee, it is illogical for an ALJ to accord deference to an agency's legal conclusion and to the particular consequences or sanction imposed. See N.C. Gen. Stat. § 126-34.02(d)
An appellate court's standard of review of an agency's final decision-and now, an administrative law judge's final decision-has been, and remains, whole record on the findings of fact and de novo on the conclusions of law. See Carroll , 358 N.C. at 666-67, 599 S.E.2d at 898 (noting that whether just cause existed is a question of law which is reviewed de novo on appeal); Blackburn v. N.C. Dept. of Pub. Safety , --- N.C. App. ----, ----, 784 S.E.2d 509, 518, disc. review denied , --- N.C. ----, 786 S.E.2d 915 (2016) (" 'Where the petitioner alleges that the agency decision was based on error of law, the reviewing court must examine the record de novo , as though the issue had not yet been considered by the agency.' " (quoting Souther v. New River Area Mental Health , 142 N.C.App. 1, 4, 541 S.E.2d 750, 752, aff'd per curiam , 354 N.C. 209, 552 S.E.2d 162 (2001) ).
An ALJ, reviewing an agency's decision to discipline a career State employee within the context of a contested case hearing, owes no deference to the agency's conclusion of law that either just cause existed or the proper consequences of the agency's action. This Court came to the same conclusion in a recent unpublished opinion. See Clark v. N.C. Dep't of Pub. Safety , --- N.C. App. ----, ----, 791 S.E.2d 661 (Sept. 6, 2016) (unpublished) (rejecting Respondent's argument that "the ALJ [improperly] substituted his own judgment for that of" the agency in holding that "whether just cause exists is a conclusion of law, which the ALJ had authority to review de novo ." (citing Carroll , 358 N.C. at 666, 599 S.E.2d at 898 )).
After receiving and considering the evidence, and entering findings of fact, an ALJ is free to substitute their judgment for that of the agency regarding the legal conclusion of whether just cause existed for the agency's action. Based upon the evidence presented and the findings of fact supporting the legal conclusion of just cause, the ALJ may order any remedy within the range provided in N.C. Gen. Stat. § 126-34.02, without regard to the initial agency's determination.
B. Whether Petitioner's Conduct Warranted Termination
Respondent contends the ALJ erred in concluding Respondent's dismissal of Petitioner for unacceptable personal conduct was not supported by just cause. A career state employee subject to the North Carolina Human Resources Act may only be "discharged, suspended, or demoted for disciplinary reasons" upon a showing of "just cause." N.C. Gen. Stat. § 126-35(a) (2015). Under the North Carolina Administrative *103 Code, "just cause" for the dismissal, suspension, or demotion of a career state employee may be established only on a showing of "unsatisfactory job performance, including grossly inefficient job performance," or "unacceptable personal conduct." 25 NCAC 1J .0604 (2016).
"Just cause, like justice itself, is not susceptible of precise definition." Carroll , 358 N.C. at 669, 599 S.E.2d at 900 (citations and quotation marks omitted). The term "just cause" has been interpreted by our Supreme Court as a "flexible concept, embodying notions of equity and fairness, that can only be determined upon an examination of the facts and circumstances of each individual case." Id. (citation and quotation marks omitted). "Inevitably, this inquiry requires an irreducible act of judgment that cannot always be satisfied by the mechanical application of rules and regulations." Id.
In Warren v. N.C. Dep't of Crime Control , 221 N.C.App. 376, 726 S.E.2d 920, this Court delineated a three-part inquiry to guide judges in determining whether just cause existed for an employee's dismissal for unacceptable personal conduct:
We conclude that the best way to accommodate the Supreme Court's flexibility *135 and fairness requirements for just cause is to balance the equities after the unacceptable personal conduct analysis. This avoids contorting the language of the Administrative Code defining unacceptable personal conduct. The proper analytical approach is to first determine whether the employee engaged in the conduct the employer alleges. The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code. Unacceptable personal conduct does not necessarily establish just cause for all types of discipline. If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken.
Warren , 221 N.C.App. at 382-83, 726 S.E.2d at 925 (emphasis supplied) (citations and footnote omitted). The first two prongs of Warren are easily satisfied. The ALJ found and concluded as follows:
12. Here, the preponderance of the evidence shows that Petitioner engaged in the conduct alleged by Respondent. While there is some evidence to the contrary, the greater *104 weight of evidence demonstrates that Petitioner struck a restrained inmate in the abdomen.
....
18. Hitting inmate Walls while in restraints does not fit any of the categories identified for use of force. The only reason that makes any sense at all for the force used in this case is as some form of retribution for having defecated in his cell or to make a point that such behavior is not to be tolerated. Such behavior by Petitioner is prohibited. Hitting Walls was not "justified."
19. Thus, hitting a restrained inmate as found herein violates Respondent's Use of Force Policy and constitutes unacceptable personal conduct as Petitioner's conduct violates a written work rule.
As to the first prong, the unchallenged findings of fact tend to show Petitioner punched Walls in the stomach, without provocation, and at a time when Walls was restrained and under the control of multiple officers.
As to the second prong, Petitioner's conduct amounts to the "willful violation of known or written work rules," which is one of the listed instances of unacceptable conduct pursuant to 25 NCAC 1J .0614(8)(d) (2016). Petitioner had been trained and was aware of Respondent's Use of Force policy, which limited the use of force to "instances of justifiable self-defense, protection of others, protection of state property, prevention of escapes, and to maintain or regain control, and then only as a last resort" and noted that "[i]n no event is physical force justifiable as punishment."
We agree with the ALJ's finding of fact that punching Walls, while he was in restraints and under the control of other officers, "does not fit into any of the categories identified for use of force," and that force was used by Petitioner as "some form of retribution" for Walls' actions. We also agree with Respondent and the ALJ that the record evidence and the ALJ's conclusions support the determination that Petitioner's conduct constituted "unacceptable personal conduct" and warranted discipline for his actions. 25 NCAC 1J .0604.
Having found the first two Warren prongs satisfied, we proceed to a consideration of whether "[Petitioner's] misconduct amounted to just cause for the disciplinary action taken ." Warren , 221 N.C.App. at 382-83, 726 S.E.2d at 925 (emphasis supplied). The ALJ found:
*105 28. In this contested case, there are considerable mitigating factors to consider. They are as follows:
a. This Tribunal has found as fact and concluded as a matter of law there is sufficient probative evidence that Petitioner punched Walls in the stomach as alleged by Respondent in the dismissal letter. While Sgt. Grantham lacks credibility, the other correctional officers are credible. However, there are aspects of the facts that remain troubling and serve to mitigate in favor of Petitioner.
b. The Petitioner has a good work history with Respondent generally and with inmate *136 Walls in particular. There is no evidence of any prior instances of unacceptable personal conduct, disciplinary action, or anything in Petitioner's past suggesting he would engage in an act of excessive force against an inmate. His regular shift sergeant described him as a hard worker and an asset to his unit.
c. Petitioner had a good working relationship with Walls, an inmate who has more than 100 adjudicated disciplinary infractions. Petitioner testified without contradiction that he was the staff member on his regular shift who could calm Walls down because Walls thought Petitioner was a fellow Muslim. There was no indication that Petitioner had a prior specific problem with Walls or any substantially negative prior interaction with Walls.
d. This action took place when Petitioner was not working his regular shift. He was working with a supervisor (Grantham) and other correctional officers (Johnson, Sherman, and Alexander) with whom he had not worked before. It does not seem logical for Petitioner to punch an inmate without provocation while working with strangers.
e. The medical evidence-or lack thereof-also militates in Petitioner's behalf. Petitioner is a very large man and inmate Walls is a small man. The Use of Force Medical screening conducted within half an hour of the alleged assault found (Petitioner's Exhibit 3E) no evidence whatsoever of Walls having been punched by anyone. There was no sign of any injury at all; not even redness.
f. Among inmate Walls's many disciplinary issues, there were multiple complaints by Walls that he was assaulted *106 by staff, all of which were unsubstantiated. On this occasion, Walls never claimed to anyone that he was assaulted by Petitioner. He did not file a grievance against Petitioner or write any statement against Petitioner as he had against other officers in the past.
g. Walls also had a documented history of making fictitious or exaggerated medical complaints. On this occasion, less than 30 minutes after allegedly being punched by Petitioner, Walls made no complaints of pain or injury whatever and was in "no active distress," with "no complaints," even though he was being attended to in the medical clinic at the facility with every opportunity to complain. It strains credulity to conclude that an inmate with this kind of history would make no complaint whatever after receiving an unprovoked assault from a staff member.
h. The statement "Y'all hit like bitches" attributed to Walls was plural, made no reference to Petitioner, and was spoken to Sergeant Grantham.
i. Video taken moments after the supposed unprovoked assault shows Walls walking erect, smiling, and in no apparent distress. Petitioner and officers Sherman and Alexander appear to be engaged in friendly conversation and are smiling and at times laughing. Johnson is in front escorting the inmate, and is not engaged in the conversation, but the video fails to show him remonstrating with Petitioner or trying to keep Petitioner away from the inmate. Everything about the video shows a completely uneventful situation. Likewise, the video taken directly before the incident shows nothing unusual.
j. There is no evidence that Walls ever bent over even in the slightest after having been hit by a very large man. He was not winded by having been punched. There was no evidence at all from any of the corrections officers of any physical reaction to having been punched.
k. The facts that Walls made no complaint, that he made the statement to Grantham, that there was no physical reaction to having been punched, that there was no sign of assault in the physical exam and moments later he is walking as though nothing has happened are indicative that only one of two possible scenarios existed on that date *107 and at that time: either (1) Petitioner did not hit inmate Walls at all, or (2) Petitioner did hit Walls but with such insignificant force that it was practically non-existent.
l. Having concluded that the three corrections officers' testimony was sufficiently credible and concluded that indeed Petitioner did strike inmate Walls, then the only rational conclusion based on the totality *137 of the circumstances in this contested case is that Petitioner struck Walls with very little force.
These findings, which are challenged by Respondent, are listed in the ALJ's final decision under the heading "Conclusions of Law." However, they are more appropriately reviewed as findings of fact. See Barnette v. Lowe's Home Ctrs., Inc. , --- N.C. App. ----, ----, 785 S.E.2d 161, 165 (2016) ("[A]ny determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law," while a "determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact." (citation omitted)). We consider and review them as findings of fact, without regard to the given label. See N.C. State Bar v. Key , 189 N.C.App. 80, 88, 658 S.E.2d 493, 499 (2008) ("[C]lassification of an item within [an] order is not determinative, and, when necessary, the appellate court can reclassify an item before applying the appropriate standard of review.").
As the sole fact-finder, the ALJ has both the duty and prerogative to determine the credibility of the witnesses, the weight and sufficiency of their testimony, "to draw inferences from the facts, and to sift and appraise conflicting and circumstantial evidence." Ledford , --- N.C. App. at ----, 786 S.E.2d at 64 (citation omitted). We afford "a high degree of deference" to the ALJ's findings, when they are supported by substantial evidence in the record. Id . After reviewing the whole record, we find substantial evidence support the ALJ's findings, and they are binding on appeal. See Carroll , 358 N.C. at 660, 599 S.E.2d at 895.
Just cause is determined upon "examination of all the facts, circumstances, and equities of a case, [and] consideration of additional factors shedding light on the employee's conduct[.]" Bulloch v. N.C. Dept. of Crime Control and Pub. Safety , 223 N.C.App. 1, 12, 732 S.E.2d 373, 381, disc. review denied , 366 N.C. 418, 735 S.E.2d 178 (2012). The Court in Warren referred to this process as "balanc[ing] the equities." Warren, 221 N.C.App. at 382, 726 S.E.2d at 925. This Court recently explained, "A just and equitable determination of whether the unacceptable personal conduct constituted just cause for the disciplinary action taken requires *108 consideration of the facts and circumstances of each case, including mitigating factors. " N.C. Dep't of Pub. Safety v. Shields , --- N.C. App. ----, ----, 781 S.E.2d 718 (Jan. 19, 2016) (unpublished), disc. review denied , --- N.C. ----, 784 S.E.2d 176 (2016).
Based upon the evidence received and the findings set forth above, the ALJ determined Petitioner's conduct "does not rise to the level of conduct that would justify the severest sanction of dismissal under the totality of facts and circumstances of this contested case; it is not the 'right' thing to do." While we do not condone Respondent's behavior, we recognize the ALJ is the sole fact-finder, and the only tribunal with the ability to hear testimony, observe witnesses, and weigh credibility. As such, we defer to the ALJ's findings of fact, even if evidence was presented to support contrary findings. Ledford , --- N.C. App. at ----, 786 S.E.2d at 64.
In consideration of the findings of fact set forth above, and after "balancing the equities," we hold the ALJ did not err in determining the agency did not meet its burden to show just cause for Respondent's termination. Warren , 221 N.C.App. at 383, 726 S.E.2d at 925.
C. Imposition of Alternative Discipline by the ALJ
The North Carolina Administrative Code sets forth four disciplinary alternatives, which may be imposed against an employee upon a finding of just cause: "(1) written warning; (2) Disciplinary suspension without pay; (3) Demotion; and (4) Dismissal." 25 NCAC 1J.0604(a). "Unacceptable personal conduct does not necessarily establish just cause for all types of discipline.... Just cause must be determined based upon an examination of the facts and circumstances of each individual case." Warren, 221 N.C.App. at 383, 726 S.E.2d at 925. Under the necessarily malleable judgment standard created by our precedents, and after considering the totality of the unique facts and circumstances of the present case, we affirm the ALJ's *138 determination that just cause did not exist to impose the most severe form of discipline: dismissal from employment. See Carroll , 358 N.C. at 669, 599 S.E.2d at 900.
In a contested case, "the burden of showing a career State employee was discharged, demoted, or suspended for just cause rests with the employer." N.C. Gen. Stat. § 126-34.02(d). There are likely scenarios in which the employer meets its burden to show just cause exists to impose a disciplinary action, but just cause does not exist to support dismissal of the employee. The General Assembly recognized this range of possible sanctions and enacted N.C. Gen. Stat. § 126-34.02 as part of the 2013 amendments. The statute reads:
*109 (a) Once a final agency decision has been issued in accordance with G.S. 126-34.01, an applicant for State employment, a State employee, or former State employee may file a contested case in the Office of Administrative Hearings under Article 3 of Chapter 150B of the General Statutes. The contested case must be filed within 30 days of receipt of the final agency decision. Except for cases of extraordinary cause shown, the Office of Administrative Hearings shall hear and issue a final decision in accordance with G.S. 150B-34 within 180 days from the commencement of the case. In deciding cases under this section, the Office of Administrative Hearings may grant the following relief:
(1) Reinstate any employee to the position from which the employee has been removed.
(2) Order the employment, promotion, transfer, or salary adjustment of any individual to whom it has been wrongfully denied.
(3) Direct other suitable action to correct the abuse which may include the requirement of payment for any loss of salary which has resulted from the improper action of the appointing authority.
N.C. Gen. Stat. § 126-34.02(a) (2015) (emphases supplied).
Under subsection (a)(3) of the statute, the ALJ has express statutory authority to "[d]irect other suitable action" upon a finding that just cause does not exist for the particular action taken by the agency. Under the ALJ's de novo review, the authority to "[d]irect other suitable action" includes the authority to impose a less severe sanction as "relief." See id .
Because the ALJ hears the evidence, determines the weight and credibility of the evidence, makes findings of fact, and "balanc[es] the equities," the ALJ has the authority under de novo review to impose an alternative discipline. Upon the ALJ's determination that the agency met the first two prongs of the Warren standard, but just cause does not exist for the particular disciplinary alternative imposed by the agency, the ALJ may impose an alternative sanction within the range of allowed dispositions. See id . We hold the ALJ acted within his authority by determining the agency failed to meet its burden to show just cause existed to warrant Petitioner's termination for unacceptable personal conduct.
*110 Our separately writing colleague states N.C. Gen. Stat. § 126-34.02(a)(3) is inapplicable, because "the ALJ could only invoke his or her powers pursuant to [this subsection] if it first determined there was no just cause for the termination of Petitioner's employment." The ALJ clearly determined just cause does not exist for Petitioner's termination. The separate opinion would impose the harshest alternative allowed as a sanction for unacceptable personal conduct. No process or standard is proposed to guide the substitution of the sanction for that imposed by the finder of fact.
The final decision states the ALJ "finds that there was not just cause to dismiss Petitioner for unacceptable personal conduct." (emphasis supplied). The ALJ heard the evidence, weighed the credibility, and determined dismissal of Petitioner was unwarranted under these facts, and imposed a written warning and a one-week suspension without pay. Under our de novo review, we agree the evidence and findings of fact tends to show just cause exists to impose discipline upon petitioner as a result of his unacceptable *139 personal conduct. The ALJ imposed a sanction within the range of authorized disciplinary alternatives. See 25 N.C.A.C. 1J .0604(a).
V. Conclusion
Under our de novo review of the existence of just cause, and giving whole record deference to the ALJ's findings of fact, the ALJ's conclusion that Petitioner's conduct "does not rise to the level of conduct that would justify the severest sanction of dismissal under the totality of facts and circumstances of this contested case," and dismissal of Petitioner "is not the 'right' thing to do" is affirmed. The ALJ's conclusion that just cause existed for a written warning and a one-week suspension without pay is also affirmed. The final decision of the ALJ is affirmed.
AFFIRMED.
Judge DIETZ concurs.
Chief Judge McGEE concurs in part, dissents in part, with separate opinion.