TYSON, Judge.
 

 *629
 
 Caswell Developmental Center, North Carolina Department of Health and Human Services ("Respondent") appeals from the final decision of the administrative law judge ("ALJ"), which reversed Respondent's decision to suspend Tankita Peterson ("Petitioner") for five days without pay. We affirm the decision of the ALJ.
 

 I. Background
 

 Caswell Developmental Center ("Caswell") is a state-run facility operated by the North Carolina Department of Health and Human Services. Caswell provides care to residents who have disabilities, behavioral challenges, or medical conditions that require 24-hour care and supervision. Petitioner is a career state employee and has been employed at Caswell since October 2009. Petitioner was assigned to work the morning shift from 6:00 a.m. to 2:30 p.m. at the Magnolia Cottage, where five patients resided.
 

 A. Petitioner's Late Arrivals and Disciplinary Action
 

 On 2 June 2016, Petitioner overslept to timely report for work. She awoke at approximately 6:20 a.m., and arrived at work at 7:00 a.m., an hour after her scheduled start time. On 6 June 2016, Petitioner received a documented counseling memo for unacceptable personal conduct on 2 June 2016 for her failing to report to work as scheduled and failing to notify her supervisor of her need to be late prior to the scheduled start of her shift, in violation of Caswell's Policy 4.9 Supervisor Notification of Absence. The memo further noted that violation of Policy 4.9 is an unexcused absence. Petitioner refused to sign the memo, because she "d[id] not agree ... at all."
 

 On 27 August 2016, Petitioner again overslept. She was awakened by a phone call from a colleague at approximately 6:30 a.m., and arrived for work at 7:00 a.m. Petitioner was issued a notice of pre-disciplinary conference on 5 September 2016, requesting she attend the pre-disciplinary conference the
 
 *592
 
 next day. The notice informed Petitioner of the possibility of a suspension without pay due to Petitioner's
 
 *630
 
 unacceptable personal conduct of reporting to work late and for failing to notify her supervisor on 27 August 2016, in violation of Policy 4.9 and Policy 5.1.46 Time and Attendance.
 

 Petitioner was given the opportunity to respond to the proposed suspension without pay at the pre-disciplinary conference on 6 September 2016. In her written statement, Petitioner acknowledged she had overslept on 27 August 2016, and the alarm clock, which had failed to wake her up on that day, had previously failed before.
 

 Petitioner was suspended for five days without pay on 8 September 2016 for "unacceptable personal conduct" including:
 

 1) conduct for which no reasonable person should expect to receive prior warning, 2) conduct unbecoming a State employee that is detrimental for state service and 3) willful violation of known or written work rules [i.e., Caswell Developmental Center Administrative Policy Manual #5.1.46 (Time and Attendance) and Developmental Technician Manual #4.9 (Supervisor Notification of Absences) ]. Specifically, [reporting] to work late and fail[ing] to notify a supervisor of [Petitioner's] need to be late from work, according to policy.
 

 Petitioner's supervisor referenced the previous documented counseling for the same issue on 6 June 2016, and Petitioner's in-service training on the violated policies on 22 January 2016 and 6 June 2016.
 

 B. Caswell's Policies
 

 Caswell's Time and Attendance Policy 5.1.46 states it exists to "ensure that sufficient staff are available to provide the continuous operation of the facility." The policy defines "tardiness" as the "[f]ailure to report to his/her assigned work area within three (3) minutes of the scheduled time.... Any tardiness exceeding 2 hours will be considered an unscheduled absence." An "unscheduled absence" is defined as "[a]bsence from work two or more hours of a scheduled shift ... which is
 
 not
 

 approved
 
 by the immediate supervisor ... in advance." (Emphasis original).
 

 Under the procedures of 5.1.46, disciplinary action begins after five unscheduled absences or five instances of tardiness in reporting to work in a twelve-month period. Five occurrences triggers documented counseling, a written warning is issued for the sixth occurrence, a three-day suspension without pay is imposed for the seventh occurrence, and the eighth occurrence requires dismissal. Prior to any disciplinary action on unscheduled absences, the supervisor will log absences,
 
 *631
 
 meet with the employee, and initiate documented coaching and policy in-service training.
 

 Supervisor Notification of Absences Policy 4.9 provides, "[p]ursuant to ... Administrative Policy 5.1.46, 'Time and Attendance', employees are required to notify their immediate supervisor or designee of a need to be absent, at a reasonable time, before the beginning of the assigned work shift." Failure to conform to this policy "will be viewed as an unexcused absence, resulting in unacceptable personal conduct and subject to intervention and disciplinary action as follows; 1) A documented counseling on the first occurrence[;] 2) A 5-day Disciplinary Suspension Without Pay on the second occurrence; and 3) Dismissal on the third and final occurrence." Policy 4.9 does not address an employee's tardiness to begin scheduled work.
 

 C. Procedural History
 

 On 19 December 2016, Petitioner filed a petition for a contested case with the Office of Administrative Hearings, alleging Respondent had suspended her for five days without pay without just cause. Petitioner filed a motion for summary judgment on 31 March 2017 and argued Respondent had improperly applied Policy 4.9 to her, since Policy 4.9 dealt with absences, because Petitioner was not "absent" as defined under Policy 5.1.46, but only tardy. The ALJ denied Petitioner's motion on 19 April 2017.
 

 The matter was heard before the ALJ on 20 April 2017. In the final decision, issued 23 June 2017, the ALJ ruled Respondent did not have just cause to suspend Petitioner for five days without pay. Respondent was ordered to remove Petitioner's suspension, to issue a written warning, and to reimburse
 
 *593
 
 Petitioner back pay and any other benefits she would have been entitled to receive. In an order dated 6 July 2017, Petitioner was also awarded attorney's fees. Respondent filed timely notice of appeal on 21 July 2017.
 

 II. Jurisdiction
 

 An appeal lies with this Court of a final decision of the Office of Administrative Hearings pursuant to N.C. Gen. Stat. § 7A-29 (2017).
 

 III. Issues
 

 Respondent argues it had just cause to suspend Petitioner for five days without pay, and the ALJ committed legal error in finding no just cause existed for its actions. Respondent also argues the ALJ's reasoning in the final decision was arbitrary and capricious.
 

 *632
 

 IV. Analysis
 

 A. Standard of Review
 

 The standard of review of a final decision of an agency depends on the alleged errors. N.C. Gen. Stat. § 150B-51(c) (2017). The Court reviews purported errors of law
 
 de novo
 
 , while decisions alleged to be arbitrary and capricious are reviewed under the whole record standard.
 
 Id.
 

 B. Just Cause
 

 Career state employees are entitled to statutory protections, including the protection from being discharged, suspended, or demoted without "just cause."
 
 N.C. Gen. Stat. § 126-35
 
 (a) (2017). This Court established a three-part analysis to determine whether just cause existed for an employee's adverse employment action for unacceptable personal conduct:
 

 The proper analytical approach is to first determine whether the employee engaged in the conduct the employer alleges. The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code. Unacceptable personal conduct does not necessarily establish just cause for all types of discipline. If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken. Just cause must be determined based "upon an examination of the facts and circumstances of each individual case."
 

 Warren v. N.C. Dep't of Crime Control
 
 ,
 
 221 N.C. App. 376
 
 , 383,
 
 726 S.E.2d 920
 
 , 925 (2012) (quoting
 
 N.C. Dep't of Env't & Natural Res. v. Carroll
 
 ,
 
 358 N.C. 649
 
 , 669,
 
 599 S.E.2d 888
 
 , 900 (2004) ).
 

 Here, only the third prong of the analysis is at issue, as the ALJ concluded, and Petitioner did not appeal, the first two findings that Petitioner had engaged in the alleged unacceptable personal conduct and that conduct fell within one of the provided categories. Respondent argues the ALJ's finding that the five-day suspension "did not fit the crime" was legal error because the preponderance of the evidence supports just cause for the suspension. After review of the record and decision, we disagree.
 

 The record evidence indicates Petitioner had eight years of positive employment history. The Supreme Court of North Carolina has
 
 *633
 
 identified past history as a factor to consider in a just cause determination.
 
 See
 

 Carroll
 
 ,
 
 358 N.C. at 670
 
 ,
 
 599 S.E.2d at 901
 
 .
 

 Evidence was presented that other employees were able to cover the hour Petitioner was late on 2 June and 27 August 2016, resulting in no negative impact to the operation of the facility or the care of its residents. Respondent offered testimony of the potential harm from tardiness, including the uncertainty surrounding the maintenance of needs of the residents, the overtime costs, and the slackening of the organizational structure. We agree these could be general concerns associated with any absent employee, but the evidence in this case does not support these arguments, with the exception of overtime pay for the staff coverage retained until Petitioner arrived at 7:00 a.m.
 

 Finally, the ALJ found and concluded the application of Policy 4.9 inappropriate, and issuing Petitioner's suspension under Policy 4.9 "essentially rendered the 'tardiness' definition in Policy 5.1.46 meaningless." Policy 4.9 makes no mention of arriving or starting late for scheduled work or tardiness, nor provides a definition, but does reference and
 
 *594
 
 is "pursuant to," Policy 5.1.46, which defines tardiness as being between three minutes and two hours late for scheduled work. Any tardiness after two hours is defined as an "unscheduled absence."
 

 In accordance with contract law, when a term is defined in one location of the document, it is to be given that same definition throughout, unless context demands otherwise.
 
 State v. Philip Morris USA Inc.
 
 ,
 
 363 N.C. 623
 
 , 632,
 
 685 S.E.2d 85
 
 , 91 (2009) (citation omitted). Policy 4.9 consistently refers to absences, and the need to contact a supervisor before the start of the shift if the employee will be absent. Applying the definitions as provided in Policy 5.1.46, Petitioner was never "absent" from work, but merely tardy.
 

 Viewing the record evidence for the two occasions at issue, the ALJ could properly find the preponderance of the evidence tends to weigh in Petitioner's favor. The ALJ did not commit legal error in finding no just cause for Petitioner's suspension. While Respondent is concerned about the negative effects of unannounced and late arrivals for scheduled shifts in the operation of its facility and required staff presence to address the needs of its residents, these concerns are appropriately dealt with in consistently written policies.
 

 C. Arbitrary and Capricious
 

 Under whole record review, the reviewing court must "determine whether there is substantial evidence to justify the agency's decision."
 

 *634
 

 Carroll
 
 ,
 
 358 N.C. at 660
 
 ,
 
 599 S.E.2d at 895
 
 (citation omitted). The Respondent argues the ALJ's finding that there was no negative impact on the facility or its residents on the days Petitioner was tardy in arrival and reporting was arbitrary in capricious, under the precedent of
 
 North Carolina A & T University v. Kimber
 
 ,
 
 49 N.C. App. 46
 
 ,
 
 270 S.E.2d 492
 
 (1980). We disagree.
 

 The employee in
 
 Kimber
 
 had been dismissed for three reasons: she had been absent without prior approval, she was habitually late to work, and she falsified her time sheets to make it appear she arrived promptly.
 
 Id.
 
 at 50,
 
 270 S.E.2d at 494
 
 . The State Personnel Commission reinstated the employee, finding the punishment was too severe since the University "failed to prove that [the employee's] absences hindered the operation of the University's work."
 
 Id.
 
 at 51,
 
 270 S.E.2d at 495
 
 (internal quotation marks omitted). The superior court reviewed the Commission's decision and reversed it, concluding
 

 the Commission has said that it is unfair and unreasonable to dismiss an employee unless it can be proved that work was not completed or performed because of an absence, or unless it can be proved that no one knows of the whereabouts of the employee. Such considerations had no logical or rational relation to the issues before the Commission and to the extent the Commission weighed these considerations in its decision it acted arbitrarily and capriciously[.]
 

 Id.
 

 (emphasis omitted). This Court affirmed the superior court's ruling, finding "[t]he Commission's action reinstating Ms. Kimber was in excess of its statutory authority. The Commission has no policy under which it can excuse improper conduct by an employee[.]"
 
 Id.
 
 at 50,
 
 270 S.E.2d at 494
 
 (citations omitted).
 

 The controlling statutes and jurisprudence of this State have been amended and changed since this Court affirmed the decision in
 
 Kimber
 
 . Whereas a finding an employee failed to perform his or her duties, including intentionally falsifying records, was enough for just cause for sanctions as cited in
 
 Kimber
 
 , such a finding does not control the result here.
 
 Compare Brooks, Comr. of Labor v. Best
 
 ,
 
 45 N.C. App. 540
 
 , 542,
 
 263 S.E.2d 362
 
 , 364 (1980) ("Defendant failed to perform her duties properly on numerous occasions. Plaintiff's action in removing defendant from her position ... was justified."),
 
 with
 

 Carroll
 
 ,
 
 358 N.C. at 669
 
 ,
 
 599 S.E.2d at 901
 
 ("not
 
 every
 
 violation of law gives rise to 'just cause' for employee discipline") (emphasis original) (citation omitted).
 

 *635
 
 Instead, "[j]ust cause is determined upon examination of all the facts, circumstances, and equities of a case, [and] consideration of additional factors shedding light on the employee's conduct[.]"
 

 *595
 

 Harris v. N.C. Dep't of Pub. Safety
 
 , --- N.C. App. ----, ----,
 
 798 S.E.2d 127
 
 , 137 (citing
 
 Bulloch v. N.C. Dep't of Crime Control & Pub. Safety
 
 ,
 
 223 N.C. App. 1
 
 , 12,
 
 732 S.E.2d 373
 
 , 381 (2012) ),
 
 aff'd per curium
 
 ,
 
 370 N.C. 386
 
 ,
 
 808 S.E.2d 142
 
 (2017).
 

 After review of the whole record, it is clear the ALJ examined all the "facts, circumstances, and equities" present in the case.
 

 Id.
 

 Even if the ALJ may have reached a different result within the range of authorized actions, this Court may not substitute our judgment for that of the ALJ, as long as the ALJ's conclusion is lawful and is supported by substantial evidence.
 
 N.C. Dep't of Pub. Safety v. Ledford
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 50
 
 , 64 (2016) (citation omitted). The record before us contains substantial evidence to support the ALJ's decision.
 

 Under
 
 N.C. Gen. Stat. § 126-34.02
 
 (a)(3) (2017),
 

 the ALJ has express statutory authority to "[d]irect other suitable action" upon a finding that just cause does not exist for the particular action taken by the agency. Under the ALJ's
 
 de novo
 
 review, the authority to "[d]irect other suitable action" includes the authority to impose a less severe sanction as "relief."
 

 Harris
 
 , --- N.C. App. at ----,
 
 798 S.E.2d at
 
 138 (citing
 
 N.C. Gen. Stat. § 126-34.02
 
 (a)(3) ). This "other suitable action" can be a sanction within the range of authorized disciplinary alternatives under 25 N.C.A.C. 1J .0604(a).
 

 Id.
 

 at ----,
 
 798 S.E.2d at 138-39
 
 .
 

 The ALJ acted within her authority "by determining the agency failed to meet its burden to show just cause existed to warrant Petitioner's [suspension] for unacceptable personal conduct."
 

 Id.
 

 at ----,
 
 798 S.E.2d at 138
 
 . The imposed written warning was within the authorized disciplinary alternatives. 25 N.C.A.C. 1J .0604(a) (2017).
 

 V. Conclusion
 

 "As the sole fact-finder, the ALJ has both the duty and prerogative to determine the credibility of the witnesses, the weight and sufficiency of their testimony, to draw inferences from the facts, and to sift and appraise conflicting and circumstantial evidence."
 
 Harris
 
 , --- N.C. App. at ----,
 
 798 S.E.2d at 137
 
 (citation omitted). After weighing all the evidence before her, the ALJ concluded Respondent did not have just cause to suspend Petitioner without pay for five days for tardiness. The record
 
 *636
 
 contains substantial evidence, including the conflicting definitions, interpretations, and applications of Respondent's policies, to support this conclusion. The final decision of the ALJ is affirmed.
 
 It is so ordered.
 

 AFFIRMED.
 

 Judges BRYANT and DILLON concur.