IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-450

No. COA21-480

Filed 5 July 2022

Office of Administrative Hearings, No. 20 OSP 03088

JERRY HINTON, III, Petitioner,

v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Respondent.

Appeal by Petitioner from amended final decision entered 22 February 2021 by Administrative Law Judge J. Randolph Ward in the Office of Administrative Hearings. Heard in the Court of Appeals 8 February 2022.

*Jennifer J. Knox for Petitioner-Appellant.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Bettina J. Roberts, for Respondent-Appellee.*

INMAN, Judge.

¶ 1 Petitioner-Appellant Jerry Hinton, III, ("Mr. Hinton") appeals from an amended final decision from the Office of Administrative Hearings upholding his dismissal from employment as a correctional officer after he assaulted an inmate at a supermax prison facility. Mr. Hinton contends the Administrative Law Judge: (1) violated Rule 60(a) of North Carolina's Rules of Civil Procedure by entering two amended decisions that substantively modified the original decision; (2) failed to

make sufficient findings based in substantial evidence that Mr. Hinton's conduct constituted excessive force; and (3) erred by failing to consider whether Mr. Hinton's alleged misconduct was just cause to dismiss him from employment and whether the discipline imposed was proper, as required by our caselaw. After careful review of the record and our precedent, we remand the decision for further findings.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The record tends to show the following:

Mr. Hinton worked for the North Carolina Department of Public Safety ("NCDPS") as a correctional officer at Polk Correctional Institution. On 20 July 2019, Mr. Hinton, along with other officers, was instructed to conduct random searches of inmates after a weapon had not been recovered from a potential stabbing the previous night. Mr. Hinton selected five to six inmates, including Johansy M. Santos-Guerra ("Mr. Santos-Guerra"),[1] to search. As Mr. Hinton searched the other inmates, Mr. Santos-Guerra walked away into the dining hall and joined the lunch line. Mr. Hinton asked another officer where the inmate had gone, saying "he was going to get that curly head mother fucker."

About one minute later, Mr. Hinton entered the dining hall at a brisk pace and

---

[1] The record and briefs contain various spellings of the inmate's name. For purposes of this opinion, we defer to the spelling used by the Administrative Law Judge in the final decision.

approached the line where Mr. Santos-Guerra was standing. Mr. Hinton escorted the inmate out of the line. Mr. Santos-Guerra's hands were on his head per prison policy. When Mr. Santos-Guerra turned to Mr. Hinton, seemingly to speak to him, Mr. Hinton punched him in the face and tackled him to the floor. Mr. Hinton then kneeled over Mr. Santos-Guerra and struck him three more times in the face and head. Mr. Santos-Guerra suffered bruising and swelling to his left eye, cheek, and back of his head and was sent to the hospital for treatment.

¶ 5     Sergeant Jean Thomas ("Sergeant Thomas") was in the dining hall during the altercation and directed Mr. Hinton to release Mr. Santos-Guerra and leave the dining hall. Sergeant Thomas and another officer, Officer Glean Henderson ("Officer Henderson"), assisted Mr. Santos-Guerra to his feet. When the inmate saw Mr. Hinton, he attempted to pull away from the officers and hit Officer Henderson in the eye with his elbow. Officer Henderson injured his left knee and right shoulder as he regained control of Mr. Santos-Guerra, wrestling him to the ground. Officer Henderson had to take three months of medical leave for his injuries.

¶ 6     Following the incident, Kim Heffney ("Mr. Heffney"), an investigator with NCDPS's Office of Special Investigations and a former employee at the North Carolina State Bureau of Investigations with at least 30 years of experience, conducted an internal investigation of Mr. Hinton's conduct by reviewing video evidence and collecting witness statements. He determined Mr. Santos-Guerra "in

no way threatened [Mr.] Hinton to warrant [Mr.] Hinton's use of force" because the inmate had his hands in the air, above his head, in a known non-aggressive posture within the facility. Mr. Hinton's conduct was inconsistent with two policies implemented at the facility to assist with inmate and prison official safety—that inmates have their hands on their heads or above their shoulders when outside their cells and that officers maintain a six-foot reactive radius from inmates. The prison warden testified that Mr. Hinton's conduct placed prison staff at risk and that the situation could have escalated into a riot or large-scale assault.

¶ 7        On 8 April 2020, Mr. Hinton was dismissed for unacceptable personal conduct by excessive use of force in violation of the following policies: "The State Human Resources Manual, Disciplinary Action Policy [R]egarding Unacceptable Personal Conduct" and "The Department of Public Safety, Prisons Policy and Procedures Manual, Chapter F .1500, Use of Force .1501." He appealed his dismissal to NCDPS's Employee Advisory Hearing. After a hearing, the Chief Deputy Secretary considered the severity of the incident, the subject matter, the resulting harm, discipline applied in similar situations, and Mr. Hinton's work history. Following the Hearing Officer's recommendation, the Chief Deputy Secretary upheld Mr. Hinton's dismissal.

¶ 8        After exhausting his internal appeals, Mr. Hinton filed a contested case petition in the Office of Administrative Hearings alleging he had been dismissed without just cause. Following a hearing, on 19 February 2021, the Administrative

Law Judge issued a final decision upholding Mr. Hinton's dismissal. Three days later, at 4:10 p.m. on 22 February, the Administrative Law Judge entered an amended final decision "to correct scrivener's errors in a name and date, and to remove extraneous matter" pursuant to Rule 60(a). At 4:30 p.m. on the same day, the Administrative Law Judge entered a second amended final decision for the same purpose. The Administrative Law Judge then struck the first amended decision from the record. Mr. Hinton timely appealed to this Court.

## II.    ANALYSIS

### A. Amended Decisions

Mr. Hinton argues the Administrative Law Judge's amendments to the final decision affected his substantive rights and violated our Rules of Civil Procedure. We disagree.

Rule 60(a) confers upon our courts the power to correct defective orders:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party and after such notice, if any, as the judge orders.

N.C. Gen. Stat. § 1A-1, Rule 60(a) (2021). However, "[c]ourts do not have the power under Rule 60(a) to affect the substantive rights of the parties or correct substantive errors in their decisions." *Hinson v. Hinson*, 78 N.C. App. 613, 615, 337 S.E.2d 663, 664 (1985) (citations omitted). "A change in an order is considered substantive and

outside the boundaries of Rule 60(a) when it *alters the effect of the original order*." *Pratt v. Staton*, 147 N.C. App. 771, 774, 556 S.E.2d 621, 624 (2001) (quotation marks and citation omitted) (emphasis added).

¶ 11          Here, the original decision affirmed NCDPS's dismissal of Mr. Hinton for just cause. The effect of the amended decision entered by the court three days later was the same.[2] *See id.* The original order inadvertently included references to insubordination as unacceptable personal conduct, incidents, and disciplinary actions which clearly did not involve Mr. Hinton. Because the altered portions did not pertain to Mr. Hinton, it is clear to this Court that these were merely clerical or typographical errors, not substantive changes altering the effect of the original order. *See id. Cf. H & B Co. v. Hammond*, 17 N.C. App. 534, 538-39, 195 S.E.2d 58, 60-61 (1973) (holding a money judgment was improperly changed to a real property lien). Thus, the amended decision supersedes the original decision and is operative.

**B. Insufficient Findings about Excessive Use of Force**

¶ 12          Mr. Hinton argues there is neither substantial evidence in the record nor sufficient findings in the Administrative Law Judge's order to support the conclusion that he violated NCDPS's use of force policy. We agree, in part, and remand for additional findings.

---

[2] Because the trial court struck the first amended decision from the record, we only consider the second amended decision in our discussion.

*1. Standard of Review*

¶ 13    Our standard of review for just cause decisions is governed by statute. *See Harris v. N.C. Dep't of Pub. Safety*, 252 N.C. App. 94, 98-99, 798 S.E.2d 127, 132 (2017). Our General Statutes provide that an agency's final decision may be reversed or modified if the reviewing court determines that the petitioner's substantial rights may have been prejudiced because the agency's findings or conclusions are:

> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2021). Our standard of review is dictated by the substantive nature of each assignment of error. § 150B-51(c); *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004).

¶ 14    We review questions of law, the first four grounds set forth in the statute, *de novo*, whereas fact-intensive issues, the remaining two grounds, are reviewed under the "whole record test." *N.C. Dep't of Env't & Nat. Res.*, 358 N.C. at 659, 599 S.E.2d at 894. Under *de novo* review, we consider the matter anew and freely substitute our

own judgment for that of the agency. *Mann Media, Inc. v. Randolph Cnty. Plan. Bd.*, 356 N.C. 1, 13-14, 565 S.E.2d 9, 17 (2002). Applying the whole record test, on the other hand, we "must examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision." *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004). Substantial evidence is "[r]elevant evidence a reasonable mind might accept as adequate to support a conclusion." § 150B-2(8c).

*2. Discussion*

¶ 15      We consider whether the record contains substantial evidence that Mr. Hinton violated NCDPS's use of force policy. The use of force policy provides:

> The use of force shall be permissible only to the extent reasonably necessary for a proper correctional objective. This prohibition shall not be construed to mean that staff must suffer an assault upon their person before taking appropriate defensive action or that the use of force by another must be met with strictly equal force on the part of the staff.

N.C. Dep't of Pub. Safety: Prisons, *Policy & Procedures: Use of Force*, Chapter F, § .1503(a) (Aug. 30, 2018). The policy further required officers to give a verbal command and then attempt to deploy pepper spray before physically engaging with the inmate. Mr. Hinton testified he was aware of the policies.

¶ 16      Examining all record evidence, including a video recording of the incident,

first-hand testimony from witnesses, expert testimony, and the use of force policy, we conclude there was substantial, if not ample, evidence that Mr. Hinton violated NCDPS's policy by using excessive force. The video recording shows Mr. Hinton struck Mr. Santos-Guerra in the face and head at least four times, three while on top of him on the ground. Mr. Santos-Guerra's hands were raised above his head in a non-offensive posture at the time Mr. Hinton first struck him, demonstrating a lack of resistance. Mr. Heffney testified consistent with the video evidence. Additionally, though Mr. Hinton instructed Mr. Santos-Guerra to leave the lunch line and he complied, at no point did Mr. Hinton attempt to use pepper spray before engaging the inmate with physical violence.

¶ 17 The warden testified about the number of correctional staff present and that Mr. Hinton's conduct placed prison staff and the inmates at risk of a riot or large-scale assault. He also explained the facility had two policies to ensure inmate and prison official safety: (1) that inmates have their hands on their heads or above their shoulders when outside their cells, and (2) that officers maintain a "reactionary distance" of six feet from the inmates. An officer in the dining hall had to brandish his baton to keep onlooking inmates away from the assault. Upon review of the whole record, *N.C. Dep't of Env't & Nat. Res.*, 358 N.C. at 659, 599 S.E.2d at 894, we hold there was substantial evidence Mr. Hinton used excessive force, violating NCDPS's policy.

¶ 18        However, the Administrative Law Judge's findings are insufficient to support its conclusion that Mr. Hinton's conduct constituted excessive force.   The Administrative Law Judge's findings refer to the evidence only in a conclusory manner and address only the events giving rise to Mr. Hinton's assault on Mr. Santos-Guerra, specifically that officers were searching for a shank used in a stabbing the previous evening.   Citing the video exhibit of the incident and the "Final Agency Decision" generally, the Administrative Law Judge then found, "The preponderance of the credible evidence received at the hearing supported the accounts of [Mr. Hinton's] conduct relied on by [NCDPS] in its decision to discipline [Mr. Hinton]." The Administrative Law Judge further determined:

> Investigator Kim Heffney of the Department's Office of Special Investigations ("OSI") prepared internal investigations report submitted September 5, 2019.  He investigated whether Petitioner "used unauthorized force" during the incident "purported [to have] occurred because the offender entered the dining hall prior to being searched by CO Hinton."  Mr. Heffney concluded that the Petitioner used excessive force to subdue offender Santos-Guerra.

¶ 19        Although our appellate review requires us to consider the evidence of record and determine whether it supports Mr. Hinton's dismissal, *see Watkins*, 358 N.C. at 199, 593 S.E.2d at 769, this Court has no authority to make findings of fact, even those facts which may be derived from a video of the conduct at issue.  Those must be made by the Administrative Law Judge.  We remand to the Administrative Law

Judge for further findings explaining how and why Mr. Hinton's conduct constituted excessive force and violated NCDPS's policy.

## C. Just Cause & Proper Discipline

¶ 20          In his final assignment of error, Mr. Hinton asserts the Administrative Law Judge neglected to consider whether Mr. Hinton's alleged misconduct amounted to just cause to dismiss him from employment and whether the discipline imposed was proper.  We disagree.

¶ 21          This Court has summarized the three-part approach to determining whether just cause exists to discipline a career State employee for unacceptable personal conduct:

> First, determine whether the employee engaged in the conduct the employer alleges.  The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code.  Unacceptable personal conduct does not necessarily establish just cause for all types of discipline.  If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken.  Just cause must be determined based upon an examination of the *facts and circumstances of each individual case.*

*Warren v. N.C. Dep't of Crime Control & Pub. Safety*, 221 N.C. App. 376, 383, 726 S.E.2d 920, 925 (2012) (cleaned up) (emphasis added).  Our Supreme Court articulated certain factors to be considered in the just cause analysis: "the severity of

the violation, the subject matter involved, the resulting harm, the [employee's] work history, or discipline imposed in other cases involving similar violations." *Wetherington v. N.C. Dep't of Pub. Safety*, 368 N.C. 583, 592, 780 S.E.2d 543, 548 (2015).

¶ 22        Here, the Administrative Law Judge determined the preponderance of the evidence justified Mr. Hinton's dismissal. The Administrative Law Judge then directly quoted and cited our decision in *Warren* in one of its conclusions of law. Conclusion of Law 5 summarizes the North Carolina Administrative Code provision that Mr. Hinton violated. The Administrative Law Judge echoed *Warren*'s language in Conclusion of Law 8: "Considering the specific facts and circumstances of this case, [Mr. Hinton's] actions on July 20, 2019 constituted just cause for his dismissal."

¶ 23        Though the Administrative Law Judge did not cite *Wetherington*, its findings reveal it weighed at least some of the factors delineated by that decision. For example, Finding of Fact 8 addresses "the resulting harm" of the incident, *id.*, and Mr. Hinton's conduct, describing Officer Henderson's injuries and medical leave. The Administrative Law Judge also considered "the subject matter involved," *id.*, describing what gave rise to the events the day.

¶ 24        Even if, as Mr. Hinton argues, the Administrative Law Judge's factual analysis fell short, it is clear from the decision that it applied *Warren* and considered the *Wetherington* factors. *See Belcher v. N.C. Dep't of Pub. Safety*, 278 N.C. App. 148,

2021-NCCOA-277, 2021 WL 2425899 (unpublished) ("[A]lthough the ALJ's factual analysis fell short, the ALJ analyzed certain facts of Petitioner's case through an application of the *Warren* three-pronged approach and consideration of the *Wetherington* factors. The ALJ concluded (1) the preponderance of the evidence proved Petitioner engaged in the conduct Respondent alleged, (2) the preponderance of the evidence proved Petitioner's acts and omissions constituted grossly unacceptable personal conduct; and (3) the misconduct amounted to just cause for dismissal.").

## III.   CONCLUSION

For the reasons outlined above, we conclude that substantial evidence supported the Administrative Law Judge's determination that Mr. Hinton's conduct violated the NCDPS use of force policy, but we remand the decision for further findings not inconsistent with this opinion.

REMANDED.

Chief Judge STROUD and Judge ARROWOOD concur.