JOHNSON v. BOARD OF TRS. OF DURHAM TECHNICAL CMTY. COLL.

[157 N.C. App. 38 (2003)]

**[10]** Defendant further argues the holding in *State v. Mason* was incorrect because the violent habitual felon statute allows the use of felony judgments for enhancing punishment "when such action occurred on or after July 6, 1967," yet the statute was enacted in 1994. N.C. Gen. Stat. § 14-7.7 (2002). 6 July 1967 is the date the habitual felon statute, now G.S. § 14-7.1 *et seq.,* was enacted and the statute uses that date as a cut-off point for the felonies that can be used under it to enhance punishment. N.C. Gen. Stat. § 14-7.1 (2002). Thus, defendant argues that the violent habitual felon statute is an *ex post facto* law to the extent that it authorizes use of felonies committed between 1967 and 1994 to enhance punishment because offenders were not on notice between 1967 and 1994 that their offenses might thus be used in the future.

We reject the argument. Although the violent habitual felon statute was not enacted until 1994, perpetrators were on notice between 1967 and 1994, pursuant to the habitual felon statute, that certain crimes could be used to enhance punishment for later crimes.

Defendant received a fair trial and was sentenced according to law.

No error.

Judges STEELMAN and GEER concur.

---

SUSAN F. JOHNSON, Plaintiff v. BOARD OF TRUSTEES OF DURHAM TECHNICAL COMMUNITY COLLEGE, Defendant

No. COA02-356

(Filed 1 April 2003)

**1. Disabilities— North Carolina Persons with Disabilities Protection Act—termination from employment—misconduct discovered after discharge**

The trial court erred by failing to apply *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352 (1995), stating that evidence of employee misconduct discovered after a discharge which would have provided a lawful basis for such discharge if discovered earlier does not bar a discrimination claim, to plaintiff teacher's employment discrimination case under the North

Carolina Persons with Disabilities Protection Act (NCPDPA) based on defendant community college's failure to rehire plaintiff or offer her another contract, because: (1) the trial court specifically found that defendant's disability was the determining factor in the 16 June 1995 decision to not offer her another contract to teach at a jail, and the decision not to renew was made solely for motives unlawful under the NCPDPA; and (2) once it was determined that discriminatory conduct took place on 16 June 1995, it was improper for the trial court to have considered the after-acquired allegations of wrongdoing by plaintiff as a basis for defendant's motive in discharging plaintiff.

**2. Disabilities— North Carolina Persons with Disabilities Protection Act—termination from employment—amount of damages, costs, and attorney fees**

Although plaintiff teacher contends the trial court erred by denying plaintiff relief despite having found that defendant community college terminated her employment solely based upon her disability, this issue is remanded for an evidentiary hearing to determine the amount of damages, costs, and attorney fees that should be awarded to plaintiff in accordance with N.C.G.S. § 168A-11 and *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995), because: (1) although after-acquired evidence of pre-discharge employee misconduct will not bar a discrimination claim under the North Carolina Persons with Disabilities Protection Act, such evidence may be used to bar the specific remedy of reinstatement if the employer establishes that it would have made the same employment decision had it known of the misconduct at the time of the discharge; and (2) if an employer can show that its discovery of the employee's predischarge misconduct was inevitable and independent of its employment decision, back pay shall be limited to the time between the discharge and the time of discovery.

Appeal by plaintiff from judgment entered 12 September 2001 by Judge Howard E. Manning, Jr. in Durham County Superior Court. Heard in the Court of Appeals 22 January 2003.

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher, for plaintiff-appellant.*

*Haywood, Denny & Miller, L.L.P., by George W. Miller, III and George W. Miller, Jr., for defendant-appellee.*

*The North Carolina Academy of Trial Lawyers, by Lynn Fontana, and the American Civil Liberties Union of North Carolina, by Seth H. Jaffe, amicus curae.*

STEELMAN, Judge.

This appeal arises out of a disability discrimination claim filed by Susan F. Johnson ("plaintiff" or "Johnson") against the Trustees of Durham Technical Community College ("defendant" or "Durham Tech") under the North Carolina Persons with Disabilities Protection Act ("NCPDPA"), N.C. Gen. Stat. § 168A-1, *et seq.* (2001). Plaintiff appeals the trial court's judgment dismissing her claim with prejudice and awarding her no costs, attorney's fees or other relief. For reasons stated herein, the judgment is reversed, and this case is remanded to the trial court.

Since contracting polio as a young child, plaintiff has been unable to walk without crutches, and her physical activity has been substantially limited. In 1986, after teaching full-time for several years, plaintiff's disability forced her to quit working on a full-time basis, although she remained able to teach on a part-time basis.

In 1993, plaintiff began working with Durham Tech's Adult and Basic Skills Department as a part-time instructor for the in-house education program for inmates of the Durham County Jail Annex ("the jail"). Russ Conley ("Conley"), program director for Durham Tech's Adult and Basic Skills Department, contracted with plaintiff and supervised her work.

Plaintiff taught classes which prepared inmates to take their high school equivalency exam under her first contract with Durham Tech from November 1993 to February 1994. She entered seven additional part-time teaching contracts with Durham Tech between February 1994 and June 1995. Each of these contracts was for a specific term determined by the duration of the class taught by plaintiff.

Plaintiff initially was able to drive herself to and from work and to enter the jail using only her crutches. On 8 June 1994, plaintiff fell from her crutches as she attempted to open the security door to enter the jail and broke her back. Plaintiff applied for and received workers' compensation benefits for her injuries resulting from this fall. While recovering, plaintiff did not return to work, and defendant found a replacement teacher to fulfill the remainder of plaintiff's contract ending in August 1994.

When plaintiff returned to work for defendant under a new contract in January 1995, she was confined to a wheelchair at all times. She used wheelchair-accessible public transportation to travel to and from work at the jail and taught classes from her wheelchair. Although jail guards occasionally escorted plaintiff and helped her open doors, she generally was able to enter the jail and her classroom without assistance.

On 11 February 1995, plaintiff fell in the bathtub at her home and broke her leg. She returned to work at the jail approximately two weeks later and resumed her teaching duties from her wheelchair.

In the spring of 1995, Art Clark ("Clark"), Dean of Adult and Continuing Education at Durham Tech, and Ruth Lewis ("Lewis"), Conley's direct supervisor, discussed with Conley their concerns about plaintiff's safety and Durham Tech's liability if she were to suffer another accident at the jail. Conley also had some concerns at this time about plaintiff's prior absenteeism due to her injuries. Clark encouraged Conley to speak with plaintiff and to consider whether it would be appropriate for her to continue working at the jail in light of her previous fall.

On 16 June 1995, Conley met with plaintiff and discussed with her other teaching opportunities with Durham Tech that were not at the jail. Plaintiff was "not receptive" to these other teaching positions. Conley then informed plaintiff that "the situation had proved to be a liability for Durham Tech" and that she would not be returning to work for defendant at the jail. Conley testified that Clark had made the decision not to re-hire plaintiff and that Lewis had concurred with this decision.

Between 21 June and 24 June 1995, Clark received anonymous phone calls alleging that plaintiff was a frequent drug user, had engaged in sexual relationships with prisoners, had provided prisoners with drugs and bullets and frequently carried a loaded weapon. On 26 June 1995, Conley spoke to plaintiff at the jail and informed her that her teaching position with Durham Tech would end when her contract expired on 28 June 1995. Defendant did not offer her another teaching position.

Plaintiff filed discrimination charges against defendant with the North Carolina Department of Labor under the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240, *et seq.* (2001), and with the Equal Employment

Opportunity Commission under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (2002). After exhausting her administrative remedies, plaintiff filed a complaint alleging defendant refused to re-hire her in violation of REDA and the ADA.

On 23 December 1997, Durham County Superior Court Judge Henry V. Barnette partially granted defendant's motion for summary judgment and dismissed plaintiff's REDA claim. On 18 December 1998, Durham County Superior Court Judge Narley L. Cashwell granted defendant's motion for directed verdict as to plaintiff's ADA claim.

Plaintiff appealed both the summary judgment and directed verdict rulings. A unanimous panel of this Court affirmed Judge Barnette's order granting defendant's summary judgment motion based on plaintiff's retaliatory discharge claim under REDA, reversed Judge Cashwell's decision directing a verdict based on plaintiff's ADA claim and remanded the case for further proceedings consistent with its opinion. *Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 535 S.E.2d 357 ("*Johnson I*"), *disc. review denied and appeal dismissed*, 353 N.C. 265, 546 S.E.2d 102 (2000).

Plaintiff amended her complaint to add a claim under the NCPDPA alleging defendant failed to re-hire her on the basis of her disability in violation of N.C. Gen. Stat. § 168A-5(a)(1). On 29 May 2001, plaintiff and defendant filed a stipulation in which plaintiff voluntarily dismissed her claims under the ADA and defendant waived the statute of limitations defense to plaintiff's claim under the NCPDPA. This matter was tried without a jury in accordance with N.C. Gen. Stat. § 168A-11(a).

On 12 September 2001, Durham County Superior Court Judge Howard E. Manning, Jr., filed a judgment dismissing plaintiff's action with prejudice. The judgment contained lengthy findings of fact and conclusions of law, including the following:

> During the [s]pring of 1995, Conley became concerned about Johnson's safety in the jail, and also became concerned about whether he was putting Ms. Johnson in a situation which might prove to be a liability for [Durham Tech]. Conley's concern was "prompted" as a result of discussions with either Ruth Lewis or Dean Art Clark during the spring of 1995. Neither Lewis nor Clark went to the jail or conducted an investigation first hand with

respect to Johnson's ability to function safely in a wheelchair while carrying out her teaching responsibilities.

In the spring[] [of] 1995[,] Conley, after talking with Dean Clark and/or Lewis, broached the subject with Johnson about teaching elsewhere than at the jail. Johnson did not want to teach elsewhere[,] and Conley did not push the issue. Dean Clark and Lewis wanted Johnson out of the jail environment and wanted her to teach elsewhere for Durham Tech. Their view was "paternalistic" and not based on an investigation into the conditions at the jail or Johnson's ability to teach there despite her disability. While Dean Clark did not order Conley to move Johnson from the jail and put her somewhere else, he strongly "suggested" it to Conley. They [Dean Clark and Lewis] left the unpleasant task of carrying out the "suggestion" . . . and the placement of Johnson in a teaching position outside of jail to Conley. *The decision of Clark to be carried out by Conley was made solely on the basis of Johnson's disability* and was not based on poor job performance or absences occasioned by her disability or health.

. . .

On June 16, 1995, Conley met with Johnson at his office to discuss Johnson's teaching at the jail. . . .

. . .

Conley was not going to offer Johnson a contract that would permit her to remain and teach at the jail. The basis for Conley's decision was that his superiors at Durham Tech were concerned about "liability" should Johnson continue to teach there. *This concern was based solely upon her disability and was without basis in fact.* The jail was no more "unsafe" for Johnson than any other place because she was able to function at the facility safely and to do her job there as she had done since January 1995, without incident. *The decision to not offer Johnson another contract to teach a[t] the jail had been made as of June 16, 1995,* but not implemented or carried out, as the contract period had not expired and there was still time for Johnson to attempt to get Durham Tech to reverse its decision. Conley, her immediate supervisor and department head, was not going to offer her a contract to teach at the jail after the present contract expired.

(emphasis added).

I.

**[1]** In her first assignment of error, plaintiff contends that the trial court erred in failing to apply the United States Supreme Court decision in *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 130 L. Ed. 2d 852 (1995), to her employment discrimination claim under the NCPDPA.

In *McKennon*, the employee claimed she was discharged by her employer in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.* (1988 and Supp. V). *McKennon*, 513 U.S. at 354-55, 130 L. Ed. 2d at 859. During the course of discovery in the discriminatory discharge action, McKennon's employer learned that she had copied confidential company documents prior to her discharge. *Id.* at 355, 130 L. Ed. 2d at 859. McKennon's employer stated that if it had known of her misconduct, it would have discharged her for that reason. *Id.* The Sixth Circuit Court of Appeals held that McKennon's prior misconduct was a lawful basis for her termination and affirmed the trial court's granting of summary judgment in favor of the employer. *Id.*

A unanimous United States Supreme Court reversed, deciding McKennon's ADEA claim in the context of its prior discrimination decision in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471 (1977). The *Mt. Healthy* Court found that the employer had two motives for firing the employee, one lawful and the other unlawful. *Id.* at 285, 50 L. Ed. 2d at 482. The Court held that if the lawful reason alone would have sufficed to justify the firing, then the employee could not prevail on a claim against the employer based upon the unlawful motive. *Id.* at 285-86, 50 L. Ed. 2d at 482-83.

The *McKennon* Court held that unlike *Mt. Healthy*, there was no "mixed motive" on the part of McKennon's employer at the time she was discharged. *McKennon*, 513 U.S. at 359, 130 L. Ed. 2d at 862.

McKennon's misconduct was not discovered until after she had been fired. *The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason.* Mixed-motive cases are inapposite here, except to the important extent they underscore the necessity of determining the employer's motives in ordering the discharge, an essential element in determining whether the employer violated the federal anti-discrimination law.

*Id.* at 359-60, 130 L. Ed. 2d at 862 (emphasis added). Thus, evidence of McKennon's misconduct discovered after her discharge, which would have provided a lawful basis for such discharge if discovered earlier, did not bar her discrimination claim under the ADEA.

The *McKennon* Court noted that the ADEA was part of a "wider statutory scheme to protect employees" which included Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (2002), and the ADA. *Id.* at 357, 130 L. Ed. 2d at 860. Since the decision, the *McKennon* rule has been widely adopted in the context of employment discrimination cases under various statutes. *See, e.g., O'Neal v. City of New Albany,* 293 F.3d 998 (7th Cir. 2002) (finding that employer's belated discovery that applicant exceeded the position's statutory age maximum would not bar an ADA claim); *Miller v. AT&T Corp.,* 250 F.3d 820 (4th Cir. 2001) (applying *McKennon's* after-acquired evidence rule to unapproved absences in a Family and Medical Leave Act case); *Crapp v. City of Miami Beach Police Dept.,* 242 F.3d 1017 (11th Cir. 2001) (applying *McKennon* to employee's Title VII race discrimination claim); *Russell v. Microdyne Corp.,* 65 F.3d 1229 (4th Cir. 1995) (applying *McKennon* to Title VII gender discrimination claim); *Ricky v. Mapco, Inc.,* 50 F.3d 874 (10th Cir. 1995) (holding after-acquired evidence of sexual misconduct no bar to age discrimination claim); *Garrett v. Langley Federal Credit Union,* 121 F. Supp. 2d 887 (E.D. Va. 2000) (applying *McKennon* to federal whistleblowers' statute).

Several states also have adopted the *McKennon* rule, applying it to their own discrimination statutes. *See, e.g., Toyota Motor Mfg., U.S.A., Inc. v. Epperson,* 945 S.W.2d 413 (Ky. 1997) (disability discrimination under the Kentucky Civil Rights Act); *Wright v. Restaurant Concept Management,* 532 N.W.2d 889 (Mich. Ct. App. 1995) (discrimination under Michigan civil rights statute); *Baber v. Greenville County,* 488 S.E.2d 314 (S.C. 1997) (discrimination under state whistleblower's statute); *Norwood v. Litwin Eng'rs & Constructors,* 962 S.W.2d 220 (Tex. App. 1998) (disability discrimination under Texas Commission on Human Rights Act); *Barlow v. Hester Industries, Inc.,* 479 S.E.2d 628 (W. Va. 1996) (retaliatory discharge under West Virginia Human Rights Act).

In *Johnson I,* this court expressly adopted the *McKennon* rule in the context of plaintiff's original claim under the ADA. *Johnson I,* 139 N.C. App. at 685, 535 S.E.2d at 364 ("[a]n employer may not rely on evidence of employee misconduct which is acquired after the employ-

ment decision in question to defend the employment decision.") To determine whether the *McKennon* rationale should apply to the NCPDPA, we look to the provisions of the statute to ensure that *McKennon* is consistent with its purpose and content.

The NCPDPA is the North Carolina equivalent of the ADA, sharing the common purpose of providing protection against disability discrimination. 42 U.S.C. § 12101(b); N.C. Gen. Stat. § 168A-2. Both statutes contain rules regarding discriminatory employment practices against disabled persons. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Similarly, the NCPDPA states that "[i]t is a discriminatory practice for: (1) An employer to fail to hire or consider for employment or promotion, to discharge, or otherwise to discriminate against a qualified person with a disability on the basis of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment." N.C. Gen. Stat. § 168A-5(a)(1). The ADA and the NCPDPA also contain similar remedial provisions, including those for injunctive relief and back pay awards. 42 U.S.C. § 2000e-5(g) (2002) (providing the remedial guidelines for ADA claims); N.C. Gen. Stat. § 168A-11.

N.C. Gen. Stat. § 168A-12 provides that "[a] civil action regarding employment discrimination brought pursuant to [Chapter 168A] shall be commenced within 180 days after the date on which the aggrieved person became aware of or, with reasonable diligence, should have become aware of the alleged discriminatory practice or prohibited conduct." Thus, a cause of action under the NCPDPA accrues when the employee becomes aware of or should have become aware of the employer's wrongful conduct. This is consistent with *McKennon*, which focuses on the intent of the employer at the time of the alleged discriminatory act. *McKennon*, 513 U.S. at 360, 130 L. Ed. 2d at 862.

We find nothing in the purpose or content of the NCPDPA that is inconsistent with or contrary to the *McKennon* rule. Therefore, as this Court in *Johnson I* adopted *McKennon* under the analogous ADA provisions, we also find that the *McKennon* rule should be adopted in the context of claims under the NCPDPA.

In applying *McKennon* to plaintiff's appeal in the instant case, this Court is bound by the trial court's findings which are supported

by competent evidence, even if evidence exists to sustain contrary findings. *Fulcher v. Golden*, 147 N.C. App. 161, 554 S.E.2d 410 (2001). Our review of the trial court's conclusions of law is *de novo. Browning v. Helff*, 136 N.C. App. 420, 524 S.E.2d 95 (2000).

As noted above, N.C. Gen. Stat. § 168A-5(a)(1) makes unlawful an employer's decision not to hire or consider for employment or "otherwise to discriminate against a qualified person with a disability on the basis of a disabling condition." Our courts have not addressed the question of whether an employer's failure to re-hire an employee or to renew an employee's contract is conduct covered by this language of the NCPDPA. However, this Court determined in *Johnson I* that a failure to renew a contract constitutes actionable conduct under REDA, which broadly defines retaliatory actions to include "*other adverse employment action.*" *Johnson I*, 139 N.C. App. at 682, 535 S.E.2d at 362 (*citing* N.C. Gen. Stat. § 95-240(2) (1999)) (emphasis in original). We find plaintiff has an actionable claim under the similarly broad language of the NCPDPA for employment discrimination based on defendant's failure to re-hire plaintiff or offer her another contract.

Here, the trial court specifically found that plaintiff's "disability was the determining factor in the June 16, 1995[,] decision announced by Conley to not offer her another contract to teach at the jail" and that defendant's decision was "made solely on the basis of [plaintiff's] disability and was not based on poor job performance or absences occasioned by her disability or health." Defendant's decision not to renew plaintiff's contract was made solely for motives unlawful under the NCPDPA.

The plaintiff first became aware that she would not be offered another contract to teach for defendant on 16 June 1995. Under N.C. Gen. Stat. § 168A-12, plaintiff's cause of action accrued on 16 June 1995. The trial court's conclusion that the decision not to re-hire plaintiff was not implemented until 26 June 1995 was error. Once it was determined that discriminatory conduct took place on 16 June 1995, it was improper for the trial court to have considered the "after-acquired" allegations of wrongdoing by plaintiff as a basis for defendant's motive in discharging plaintiff. Based on the trial court's findings, judgment should have been entered for plaintiff, finding that her discharge violated the provisions of NCPDPA.

II.

[2] In her second assignment of error, plaintiff contends that the trial court erred in denying her relief despite having found that defendant

terminated her employment solely based upon her disability. She specifically argues that this Court should apply the *McKennon* rule to determine the appropriate remedy in light of after-acquired evidence of alleged employee misconduct.

In *McKennon*, the United States Supreme Court held that while "after-acquired" evidence of employee misconduct could not bar an employer's liability for discriminatory discharge, such evidence may be relevant to determining the relief available to the employee. *McKennon*, 513 U.S. at 360, 130 L. Ed. 2d at 862. If the employer establishes that the "wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge," then the employee's relief may be limited by the trial court. *Id.* at 362-63, 130 L. Ed. 2d at 864. Where such a showing is made by the employer, "neither reinstatement nor front pay is an appropriate remedy." *Id.* at 362, 130 L. Ed. 2d at 863.

Under N.C. Gen. Stat. § 168A-11(b), the trial court is allowed to order declaratory and injunctive relief. In a civil action, the trial court also may award back pay, which is expressly limited to a period of two years prior to the filing of this action. N.C. Gen. Stat. § 168A-11(b). Any interim earnings of the plaintiff or amounts earnable with reasonable diligence by the plaintiff shall operate to reduce any back pay award. *Id.* N.C. Gen. Stat. § 168A-11(d) provides that the trial court, in its discretion, may award reasonable attorney's fees to the substantially prevailing party as part of the costs.

As discussed above in Section I, *supra*, the remedial provisions of the NCPDPA are similar to those in the ADA. Based on this similarity, we find the structure and content of the NCPDPA is consistent with the application of the *McKennon* rule for determining remedies in cases under Chapter 168A and should be applied to determine the appropriate remedy in this case.

Although after-acquired evidence of pre-discharge employee misconduct will not bar a discrimination claim under NCPDPA, such evidence may be used to bar the specific remedy of reinstatement if the employer establishes that it would have made the same employment decision had it known of the misconduct at the time of the discharge. If an employer can show that its discovery of the employee's pre-discharge misconduct was inevitable and independent of its employment decision, back pay shall be limited to the time between

**DALENKO v. WAKE CTY. DEP'T OF HUMAN SERVS.**

[157 N.C. App. 49 (2003)]

the discharge and the time of discovery. *See Massey v. Trump's Castle Hotel & Casino*, 828 F. Supp. 314 (D.N.J. 1993).

Upon remand, the trial court shall enter judgment for plaintiff against defendant. The trial court shall then conduct an evidentiary hearing to determine the amount of damages, costs and attorney's fees that should be awarded to plaintiff in accordance with N.C. Gen. Stat. § 168A-11 and *McKennon*.

REVERSED AND REMANDED.

Judges MARTIN and GEER concur.