IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-13

Filed: 7 January 2020

Office of Administrative Hearings, No. 18 OSP 00407

RAY DION BROWN, Petitioner

v.

FAYETTEVILLE STATE UNIVERSITY, Respondent

Appeal by Petitioner from Final Decision entered 10 July 2018 by Administrative Law Judge Stacey Bice Bawtinhimer in the Office of Administrative Hearings. Heard in the Court of Appeals 5 September 2019.

> *The Angel Law Firm, PLLC, by Kirk J. Angel, for petitioner-appellant.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Vanessa N. Totten, for respondent-appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Ray Dion Brown (Petitioner) appeals from a Final Decision of the Administrative Law Judge (ALJ) concluding Fayetteville State University (Respondent or FSU) failed to show its decision to terminate Petitioner was for "just cause" but further concluding Petitioner was not entitled to reinstatement and additional damages based on after-acquired evidence of Petitioner's misconduct. The Record before us tends to show the following:

Petitioner began employment with Respondent as a housekeeper on a temporary basis in June 2000. On 21 August 2000, Petitioner submitted an application for full-time employment with Respondent, and on 1 February 2001, Respondent hired Petitioner into a permanent position as a housekeeper, thereby rendering Petitioner a "career State employee" under N.C. Gen. Stat. § 126-1.1(a). Petitioner continued working in this position until Respondent fired him on 26 July 2017.

On 14 July 2017, Petitioner was assigned to clean the FSU library. While in the library, Petitioner took an iPhone charger cube (charger) from Library Technician Man-Yee Chan's (Chan) desk. After realizing the charger was missing, Chan contacted her supervisor to report the missing charger and to request viewing security camera footage. Chan testified she did not recognize Petitioner on the footage and also could not remember whether she had given Petitioner permission to use the charger, even though in the past she had given several other coworkers permission to use the charger. Petitioner asserted Chan had previously given him permission to use her charger.

On 20 July 2017, Petitioner was placed on Investigatory Leave with Pay for "stealing an item from a staff member's desk." After attending a pre-disciplinary conference, Respondent notified Petitioner on 26 July 2017 in writing that he was dismissed for unacceptable personal conduct for "stealing a staff member's personal

item from their . . . desk." Petitioner appealed his discharge through Respondent's Internal Grievance Process, and Respondent issued a Final University Decision upholding Petitioner's dismissal on 19 December 2017. Thereafter, on 23 January 2018, Petitioner filed a Petition for a Contested Case Hearing with the Office of Administrative Hearings (OAH), alleging his termination was without just cause. The matter came on for hearing before the ALJ on 18 May 2018.

Sometime prior to this hearing, Respondent submitted a Motion for Summary Judgment.[1] The ALJ found that in this Motion, Respondent alleged for the first time that dismissal of Petitioner's claims was warranted because Petitioner had falsified his employment application in 2000 by "submitt[ing] false and misleading information about his criminal background[.]" Respondent asserted it first learned of Petitioner's alleged false application on 9 August 2017 and that Petitioner would have been terminated immediately for this reason. Although Respondent learned of this falsification on 9 August 2017 during the Internal Grievance Process, Respondent did not disclose this evidence to Petitioner until it filed its Motion for Summary Judgment sometime prior to the hearing before the ALJ.

Petitioner's 2000 job application asked whether Petitioner had "ever been convicted of an offense against the law other than a minor traffic violation[.]" If answered in the affirmative, the application requested the applicant to "explain fully

---

[1] In his brief, Petitioner contends Respondent filed its Motion for Summary Judgment on 21 March 2018. However, Petitioner failed to include this Motion in the Record on Appeal.

on an additional sheet." Petitioner listed driving without a license as his only prior criminal conviction. During an offer of proof at the hearing before the ALJ, Petitioner acknowledged that prior to submitting his 2000 job application with FSU, he had been convicted of carrying a concealed weapon, possession of drug paraphernalia, resisting an officer, and larceny. Petitioner, however, contended there was an additional page on his application that was not presented at the hearing showing he did disclose these prior convictions. Also during this offer of proof by Respondent, FSU's Director of Facilities Operation, who directly oversaw Petitioner, testified that had Respondent known of Petitioner's prior criminal history, Respondent would have terminated Petitioner immediately in accordance with Respondent's Employment Background and Reference Check Policy.

At the hearing on 18 May 2018, the ALJ bifurcated the hearing to address two separate issues: "Whether Respondent . . . had just cause to terminate Petitioner from his position as a Housekeeper with FSU and, if not, what is the appropriate remedy considering the 'after acquired' evidence of Petitioner's misconduct?" Regarding the first issue, the ALJ found "there [was] no credible evidence to suggest Petitioner willfully and intentionally stole the charger cube from Ms. Chan" and therefore concluded "Respondent's termination of Petitioner was without 'just cause.'" Turning to the after-acquired evidence of Petitioner's failure to disclose his prior

criminal convictions on his 2000 job application, the ALJ in its Final Decision made

the following relevant Conclusions of Law:

> 27.     Even though FSU lacked "just cause" to terminate Petitioner on July 26, 2017, FSU provided substantial "after-acquired" evidence demonstrating that Petitioner provided false and misleading information on his August 21, 2000 State Application for Employment.    FSU did not discover that Petitioner had submitted false and misleading information on his August 21, 2000 job application until August 9, 2017 after Petitioner was terminated.

> 28.     "Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362, 130 L. Ed. 2d 852, 864 (1995).  The North Carolina Court of Appeals explicitly adopted the after-acquired evidence doctrine established by *McKennon. See Johnson v. Bd. of Trs. of Durham Tech. Cmty. College*, 157 N.C. App. 38, 48, 577 S.E.2d 670, 675 (2003).  If an employer demonstrates that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge, neither reinstatement nor front pay are allowed, and back pay is limited to the time between the discharge and the time of discovery.  *Id.* at 48-49, 577 S.E.2d at 676.

> 29.     "[F]alsification of a State application or in other employment documentation" also constitutes unacceptable personal conduct.  25 N.C.A.C. 01J .0614(8)(h).

> 30.     Furthermore, a State agency may discharge "[a]ny employee who knowingly and willfully discloses false or misleading information, or conceals dishonorable military service; or conceals prior employment history or other requested information, either of which are significantly related to job

responsibilities on an application for State employment." N.C.G.S. § 126-30(a).

31.    Dismissal is "mandatory" for any employee who "discloses false or misleading information in order to meet position qualifications."  N.C.G.S. § 126-30(a).

32.    The preponderance of evidence shows that Petitioner falsely claimed on the application that his only conviction prior to August 21, 2000 was for driving without a license.

33.    Petitioner admitted at hearing that, prior to August 21, 2000, he had also been convicted of: assault on a female; carrying a concealed weapon; resisting a public officer; possession of drug paraphernalia; and larceny. . . .

34.    Pursuant to N.C.G.S. § 126-30(a), if Petitioner were still employed by FSU, his dismissal would have been mandatory.

35.    FSU provided substantial "after-acquired evidence" that bars Petitioner's reinstatement, front pay, and significantly limits his back pay to the period between July 26, 2017, his discharge, to August 9, 2017, the date FSU discovered the falsification on his application.

The ALJ's Final Decision then reversed the Final University Decision and ordered that "Petitioner is barred from reinstatement and front pay . . . [and] his back-pay shall be limited to the time between his discharge on July 26, 2017 and the discovery of the 'after acquired' evidence on August 9, 2017."  Petitioner timely filed Notice of Appeal from the ALJ's Final Decision.  *See* N.C. Gen. Stat. § 126-34.02(a) (2017)

(allowing an aggrieved party to appeal the ALJ's final decision to this Court, as further provided under N.C. Gen. Stat. § 7A-29(a)). [2]

## Issue

The sole issue on appeal is whether the ALJ erred by applying the after-acquired-evidence doctrine to Petitioner's contested case under N.C. Gen. Stat. § 126-34.02 and concluding Petitioner was barred from the remedies of reinstatement and additional compensation.

## Standard of Review

" 'It is well settled that in cases appealed from administrative tribunals, questions of law receive *de novo* review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole-record test.' " *Harris v. N.C. Dep't of Pub. Safety*, 252 N.C. App. 94, 99, 798 S.E.2d 127, 132 (quoting *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894-95 (2004)), *aff'd per curiam*, 370 N.C. 386, 808 S.E.2d 142-43 (2017).

"Where the petitioner alleges that the agency decision was based on error of law, the reviewing court must examine the record *de novo*, as though the issue had

---

[2] Although the ALJ concluded "Petitioner may seek reasonable attorney's fees proportionate to his limited prevailing party status[,]" the ALJ did not decide the amount to be awarded to Petitioner; however, the fact the ALJ left open the issue of the amount of attorney's fees "does not alter the final nature of the ALJ's Final Decision for purposes of its appealability under N.C. Gen. Stat. § 7A-29(a)." *Ayers v. Currituck Cty. Dep't of Soc. Servs.*, ___ N.C. App. ___, ___, 833 S.E.2d 649, 654 (2019) (citation omitted).

not yet been considered by the agency." *Blackburn v. N.C. Dep't of Pub. Safety*, 246 N.C. App. 196, 207, 784 S.E.2d 509, 518 (2016) (citation and quotation marks omitted). As such, "[u]nder a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [ALJ]." *Id.* (alteration in original) (citation and quotation marks omitted).

On the other hand, "[u]nder the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to support the administrative agency's findings and conclusions." *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988) (citation omitted). "When the trial court applies the whole record test, however, it may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*." *Carroll*, 358 N.C. at 660, 599 S.E.2d at 895 (citation and quotation marks omitted).

## Analysis

Petitioner contends the trial court erred by applying the after-acquired-evidence doctrine because the application of this doctrine to a career State employee would "contravene the just cause statute and deny due process." Specifically, Petitioner asserts this doctrine is inapplicable to contested cases brought under N.C. Gen. Stat. § 126-34.02 and that applying the doctrine in this case would violate

Petitioner's due process rights. In addition, Petitioner argues that even assuming the after-acquired-evidence doctrine applies, the ALJ erred by concluding Petitioner's dismissal was "mandatory." We address each of Petitioner's contentions in turn below.

The United States Supreme Court first articulated the after-acquired-evidence doctrine, or *McKennon* rule, in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 130 L. Ed. 2d 852 (1995). In *McKennon*, the employee, McKennon, alleged she was discharged by her employer in violation of the Age Discrimination in Employment Act (ADEA). *Id.* at 354-55, 130 L. Ed. 2d at 859. While conducting a deposition of McKennon during discovery, McKennon's employer learned McKennon had copied confidential company documents before her discharge, as McKennon suspected she would be fired based on her age and wanted "insurance" and "protection" against her employer. *Id.* at 355, 130 L. Ed. 2d at 859 (quotation marks omitted). A few days after these deposition disclosures, McKennon's employer sent her a letter advising her that the "removal and copying of the records was in violation of her job responsibilities[,]" informing her that she was terminated again, and stating "had it known of McKennon's misconduct it would have discharged her at once for that reason." *Id.* The Sixth Circuit Court of Appeals held this misconduct was grounds for McKennon's termination and affirmed the trial court's granting of summary judgment in favor of the employer. *Id.*

The Supreme Court reversed, concluding the after-acquired evidence of McKennon removing and copying confidential company documents could not serve as a valid justification for upholding the employee's termination because the employer did not know of McKennon's misconduct until *after* she was discharged. *Id.* at 359-60, 130 L. Ed. 2d at 862. Therefore, "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." *Id.* at 360, 130 L. Ed. 2d at 862. Although the after-acquired evidence of the employee's misconduct could not bar the employee's ADEA claim, this type of evidence could be used to limit the employee's *relief*. *Id.* at 361-62, 130 L. Ed. 2d at 863. Specifically, the Supreme Court in *McKennon* held: "as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *Id.* Rather, the *McKennon* Court limited the remedy of a wrongfully discharged employee in such circumstances to backpay for the period between the wrongful termination and discovery of the new information:

> Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit. The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. In determining

the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party.

*Id.* at 362, 130 L. Ed. 2d at 864.

In *Johnson v. Board of Trustees of Durham Technical Community College*, this Court adopted the *McKennon* rule to the plaintiff's claim under the North Carolina Persons with Disabilities Protection Act (NCPDPA), N.C. Gen. Stat. § 168A-1, *et seq.* 157 N.C. App. 38, 48, 577 S.E.2d 670, 676 (2003). The *Johnson* Court looked to the common purposes and remedial provisions of the NCPDPA and the ADA, and after noting the purposes and contents of the two statutes were consistent with one another, our Court held the *McKennon* rule applies for determining the proper remedy in NCPDPA cases involving after-acquired evidence of wrongdoing on the part of the employee. *Id.* at 46-48, 577 S.E.2d at 674-76.

Accordingly, the question presented here is whether the *McKennon* rule should also apply to contested cases brought by career State employees. As our Court did in *Johnson*, "we look to the provisions of the statute [governing career State employees] to ensure that *McKennon* is consistent with its purpose and content." *Id.* at 46, 577 S.E.2d at 674.

Pursuant to Section 126-35 of our General Statutes, "[n]o career State employee subject to the North Carolina Human Resources Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C. Gen.

Stat. § 126-35(a) (2017). Although Petitioner focuses on the purpose of the notice requirements under Section 126-35, see *infra*, the overall statutory scheme of the North Carolina Human Resources Act, which includes Section 126-35, is to ensure employees are not arbitrarily or discriminatorily fired by their employer. *See, e.g.*, N.C. Gen. Stat. § 126-34.02(b)(1)-(6) (allowing the ALJ to hear an employee's claim that the employee was wrongfully terminated based on, *inter alia*, discrimination or harassment, retaliation, or a lack of just cause). Although the North Carolina Human Resources Act protects a different class of employees than either the NCPDPA or the ADA, all three acts are designed to guard against adverse employment action by employers. *See id.* § 126-34.02(a)-(b) (allowing "an applicant for State employment, a State employee, or former State employee" to file a contested case alleging their adverse employment action was based on impermissible grounds); *see also* N.C. Gen. Stat. § 168A-5(a)(1) (2017) (barring an employer from making an adverse employment action based on the employee's or applicant's disability); 42 U.S.C.A. § 12112(a) (West 2013) (same under federal law). In addition, the ADA, NCPDPA, and the North Carolina Human Resources Act all "contain similar remedial provisions, including those for injunctive relief and back pay awards." *Johnson*, 157 N.C. App. at 46, 577 S.E.2d at 674 (citing 42 U.S.C. § 2000e-5(g); then citing N.C. Gen. Stat. § 168A-11); *see also* N.C. Gen. Stat. § 126-34.02(a)(1)-(3).

Further, Section 126-35 sets the benchmark for a state employer who desires to terminate a career State employee. This Section "establishes a condition precedent that must be fulfilled by the employer before disciplinary actions are taken." *Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 350, 342 S.E.2d 914, 922 (1986) (citation omitted). "The employer must provide the employee with a written statement enumerating specific acts or reasons for the disciplinary action" *before* the action is taken. *Id.* (citation omitted). As in *Johnson*, "[t]his is consistent with *McKennon*, which focuses on the intent of the employer at the time of the alleged discriminatory act." 157 N.C. App. at 46, 577 S.E.2d at 675 (citing *McKennon*, 513 U.S. at 360, 130 L. Ed. 2d at 862). Accordingly, "[w]e find nothing in the purpose or content of the [North Carolina Human Resources Act] that is inconsistent with or contrary to the *McKennon* rule." *Id.* Therefore, both *Johnson* and *McKennon* support the proposition that the *McKennon* rule should be adopted to contested cases brought under N.C. Gen. Stat. § 126-34.02.

This does not end our inquiry, however, as Petitioner claims extending the *McKennon* rule to this context violates a career State employee's due process rights. Specifically, Petitioner alleges by allowing the after-acquired evidence of Petitioner's misconduct—which Petitioner first learned of in Respondent's Motion for Summary Judgment before the ALJ—to limit Petitioner's remedy, Petitioner was not given the required notice and opportunity to be heard, thereby denying his due process rights.

Petitioner correctly notes a career State employee has a property interest in continued employment, therefore requiring a state employer to comply with certain procedural due process requirements before terminating employment. *See Leiphart*, 80 N.C. App. at 348-49, 342 S.E.2d at 921-22 (citations omitted). The North Carolina Human Resources Act affords these obligatory protections by requiring, *inter alia*, written notice to the employee stating the precise grounds for termination and by providing an employee with the opportunity to be heard on why the adverse employment action is not warranted. *See* N.C. Gen. Stat. §§ 126-35; -34.02. Our Supreme Court has explained these statutory protections "fully comport[] with the constitutional procedural due process requirements mandated by the Fourteenth Amendment" of the United States Constitution. *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 327, 507 S.E.2d 272, 280 (1998).

Adoption of the *McKennon* rule to contested cases brought by career State employees, however, does not conflict with these due process protections. This is so because after-acquired evidence of misconduct does not serve as a justification for the *termination*.[3] Rather, under the *McKennon* rule, this after-acquired evidence simply limits the *remedy* of an employee who was wrongfully discharged. *See Johnson*, 157 N.C. App. at 48, 577 S.E.2d at 675 (explaining that "while 'after-acquired' evidence of

---

[3] Indeed, if it did serve as a justification for termination, this would flout the purpose of the North Carolina Human Resources Act's statutory notice protections. *See Leiphart*, 80 N.C. App. at 351, 342 S.E.2d at 922 (Section 126-35(a) "was designed to prevent the employer from summarily discharging an employee and then searching for justifiable reasons for the dismissal.").

employee misconduct could not bar an employer's liability for discriminatory discharge, such evidence may be relevant to determining the *relief* available to the employee" (emphasis added) (citation omitted)). Therefore, the application of the *McKennon* rule is not inconsistent with the statutory notice provisions mandated by a career State employee's due process rights. Further, this result is consistent with N.C. Gen. Stat. § 126-34.02(a)(3), which grants the ALJ "express statutory authority to '[d]irect other suitable action' upon a finding that just cause does not exist for the particular action taken by the agency." *Harris*, 252 N.C. App. at 109, 798 S.E.2d at 138 (alteration in original) (quoting N.C. Gen. Stat. § 126-34.02(a)(3)).

In any event, and on these facts, Petitioner was afforded sufficient notice to comport with due process. Regarding the after-acquired evidence and Petitioner's notice thereof, the ALJ found that Respondent first disclosed this evidence in its "Motion for Summary Judgment to bolster Respondent's 'just cause' argument"; Petitioner filed a Motion in Limine to exclude this evidence as support for Petitioner's termination, which Motion the trial court granted; after the ALJ concluded just cause did not exist to terminate Petitioner, "Respondent was allowed to submit this 'after acquired' evidence as Offers of Proof in the form of documentation and testimony"; and "Petitioner cross-examined the witnesses on this documentation during Respondent's Offer of Proof." Because Petitioner has not challenged these Findings of Fact and because substantial evidence in the Record supports these Findings, they

are binding on appeal. *See id.* at 108, 798 S.E.2d at 137 (citation omitted). These Findings show Petitioner knew of Respondent's intent to offer this evidence prior to the hearing before the ALJ and that Petitioner was given the opportunity to cross-examine the State's witnesses on this evidence, thereby comporting with constitutional procedural due process requirements. *See Peace*, 349 N.C. at 322, 507 S.E.2d at 278 ("The fundamental premise of procedural due process protection is notice and the opportunity to be heard." (citation omitted)).

As discussed *supra*, the structure and content of the North Carolina Human Resources Act are consistent with the application of the *McKennon* rule. Further, application of this rule does not conflict with Petitioner's due process rights under the Act. Accordingly, we hold the *McKennon* rule applies in a contested case brought under N.C. Gen. Stat. § 126-34.02 and that the ALJ did not err in applying this doctrine to Petitioner's contested case.

Lastly, Petitioner contends even assuming the application of this doctrine was appropriate, the ALJ erred by concluding Petitioner's dismissal was "mandatory" because "there was not sufficient evidence to show that Petitioner should have been terminated[.]" Under Section 126-30(a) of our General Statutes, "[d]ismissal shall be mandatory where the applicant discloses false or misleading information in order to meet position qualifications." N.C. Gen. Stat. § 126-30(a) (2017).

Here, the ALJ found that Petitioner's 2000 job application listed his only criminal conviction as driving without a license. However, at the hearing before the ALJ, Petitioner admitted he had been previously convicted of carrying a concealed weapon, possession of drug paraphernalia, resisting an officer, and larceny. When asked whether he listed any of these convictions on his application, Petitioner contended "[t]here was another sheet that should have been with [the application] that had all that stuff on it." Petitioner presented no additional evidence regarding another sheet attached to his application. Based on this testimony, the ALJ found Petitioner failed to "report[] these criminal convictions on his application." The ALJ also found, based on FSU's Director of Facilities Operation's testimony, that Respondent would have terminated Petitioner immediately upon learning of Petitioner's inaccurate application. These Findings are supported by substantial evidence in the Record and thus binding on appeal. *See Harris*, 252 N.C. App. at 108, 798 S.E.2d at 137 (explaining that as the ALJ is "the only tribunal with the ability to hear testimony, observe witnesses, and weigh credibility[,] . . . we defer to the ALJ's findings of fact, even if evidence was presented to support contrary findings" (citation omitted)). In turn, these Findings support the ALJ's conclusion—"Pursuant to N.C.G.S. § 126-30(a), if Petitioner were still employed by FSU, his dismissal would have been mandatory." Therefore, the ALJ did not err in applying the *McKennon* rule, concluding Petitioner's after-acquired evidence of misconduct would have

warranted dismissal, and limiting Petitioner's remedy to back pay from the time of his discharge to the discovery of this after-acquired evidence.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the ALJ's Final Decision.

AFFIRMED.

Judges ZACHARY and ARROWOOD concur.