IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-13

 Filed: 7 January 2020

Office of Administrative Hearings, No. 18 OSP 00407

RAY DION BROWN, Petitioner

 v.

FAYETTEVILLE STATE UNIVERSITY, Respondent

 Appeal by Petitioner from Final Decision entered 10 July 2018 by

Administrative Law Judge Stacey Bice Bawtinhimer in the Office of Administrative

Hearings. Heard in the Court of Appeals 5 September 2019.

 The Angel Law Firm, PLLC, by Kirk J. Angel, for petitioner-appellant.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Vanessa
 N. Totten, for respondent-appellee.

 HAMPSON, Judge.

 Factual and Procedural Background

 Ray Dion Brown (Petitioner) appeals from a Final Decision of the

Administrative Law Judge (ALJ) concluding Fayetteville State University

(Respondent or FSU) failed to show its decision to terminate Petitioner was for “just

cause” but further concluding Petitioner was not entitled to reinstatement and

additional damages based on after-acquired evidence of Petitioner’s misconduct. The

Record before us tends to show the following:
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

 Petitioner began employment with Respondent as a housekeeper on a

temporary basis in June 2000. On 21 August 2000, Petitioner submitted an

application for full-time employment with Respondent, and on 1 February 2001,

Respondent hired Petitioner into a permanent position as a housekeeper, thereby

rendering Petitioner a “career State employee” under N.C. Gen. Stat. § 126-1.1(a).

Petitioner continued working in this position until Respondent fired him on 26 July

2017.

 On 14 July 2017, Petitioner was assigned to clean the FSU library. While in

the library, Petitioner took an iPhone charger cube (charger) from Library Technician

Man-Yee Chan’s (Chan) desk. After realizing the charger was missing, Chan

contacted her supervisor to report the missing charger and to request viewing

security camera footage. Chan testified she did not recognize Petitioner on the

footage and also could not remember whether she had given Petitioner permission to

use the charger, even though in the past she had given several other coworkers

permission to use the charger. Petitioner asserted Chan had previously given him

permission to use her charger.

 On 20 July 2017, Petitioner was placed on Investigatory Leave with Pay for

“stealing an item from a staff member’s desk.” After attending a pre-disciplinary

conference, Respondent notified Petitioner on 26 July 2017 in writing that he was

dismissed for unacceptable personal conduct for “stealing a staff member’s personal

 -2-
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

item from their . . . desk.” Petitioner appealed his discharge through Respondent’s

Internal Grievance Process, and Respondent issued a Final University Decision

upholding Petitioner’s dismissal on 19 December 2017. Thereafter, on 23 January

2018, Petitioner filed a Petition for a Contested Case Hearing with the Office of

Administrative Hearings (OAH), alleging his termination was without just cause.

The matter came on for hearing before the ALJ on 18 May 2018.

 Sometime prior to this hearing, Respondent submitted a Motion for Summary

Judgment.1 The ALJ found that in this Motion, Respondent alleged for the first time

that dismissal of Petitioner’s claims was warranted because Petitioner had falsified

his employment application in 2000 by “submitt[ing] false and misleading

information about his criminal background[.]” Respondent asserted it first learned

of Petitioner’s alleged false application on 9 August 2017 and that Petitioner would

have been terminated immediately for this reason. Although Respondent learned of

this falsification on 9 August 2017 during the Internal Grievance Process,

Respondent did not disclose this evidence to Petitioner until it filed its Motion for

Summary Judgment sometime prior to the hearing before the ALJ.

 Petitioner’s 2000 job application asked whether Petitioner had “ever been

convicted of an offense against the law other than a minor traffic violation[.]” If

answered in the affirmative, the application requested the applicant to “explain fully

 1In his brief, Petitioner contends Respondent filed its Motion for Summary Judgment on 21
March 2018. However, Petitioner failed to include this Motion in the Record on Appeal.

 -3-
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

on an additional sheet.” Petitioner listed driving without a license as his only prior

criminal conviction. During an offer of proof at the hearing before the ALJ, Petitioner

acknowledged that prior to submitting his 2000 job application with FSU, he had

been convicted of carrying a concealed weapon, possession of drug paraphernalia,

resisting an officer, and larceny. Petitioner, however, contended there was an

additional page on his application that was not presented at the hearing showing he

did disclose these prior convictions. Also during this offer of proof by Respondent,

FSU’s Director of Facilities Operation, who directly oversaw Petitioner, testified that

had Respondent known of Petitioner’s prior criminal history, Respondent would have

terminated Petitioner immediately in accordance with Respondent’s Employment

Background and Reference Check Policy.

 At the hearing on 18 May 2018, the ALJ bifurcated the hearing to address two

separate issues: “Whether Respondent . . . had just cause to terminate Petitioner from

his position as a Housekeeper with FSU and, if not, what is the appropriate remedy

considering the ‘after acquired’ evidence of Petitioner’s misconduct?” Regarding the

first issue, the ALJ found “there [was] no credible evidence to suggest Petitioner

willfully and intentionally stole the charger cube from Ms. Chan” and therefore

concluded “Respondent’s termination of Petitioner was without ‘just cause.’ ”

Turning to the after-acquired evidence of Petitioner’s failure to disclose his prior

 -4-
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

criminal convictions on his 2000 job application, the ALJ in its Final Decision made

the following relevant Conclusions of Law:

 27. Even though FSU lacked “just cause” to terminate
 Petitioner on July 26, 2017, FSU provided substantial “after-
 acquired” evidence demonstrating that Petitioner provided false
 and misleading information on his August 21, 2000 State
 Application for Employment. FSU did not discover that
 Petitioner had submitted false and misleading information on his
 August 21, 2000 job application until August 9, 2017 after
 Petitioner was terminated.

 28. “Once an employer learns about employee wrongdoing
 that would lead to a legitimate discharge, we cannot require the
 employer to ignore the information, even if it is acquired during
 the course of discovery in a suit against the employer and even if
 the information might have gone undiscovered absent the suit.”
 McKennon v. Nashville Banner Publ. Co., 513 U.S. 352, 362, 130
 L. Ed. 2d 852, 864 (1995). The North Carolina Court of Appeals
 explicitly adopted the after-acquired evidence doctrine
 established by McKennon. See Johnson v. Bd. of Trs. of Durham
 Tech. Cmty. College, 157 N.C. App. 38, 48, 577 S.E.2d 670, 675
 (2003). If an employer demonstrates that the employee in fact
 would have been terminated on those grounds alone if the
 employer had known of it at the time of discharge, neither
 reinstatement nor front pay are allowed, and back pay is limited
 to the time between the discharge and the time of discovery. Id.
 at 48-49, 577 S.E.2d at 676.

 29. “[F]alsification of a State application or in other
 employment documentation” also constitutes unacceptable
 personal conduct. 25 N.C.A.C. 01J .0614(8)(h).

 30. Furthermore, a State agency may discharge “[a]ny
 employee who knowingly and willfully discloses false or
 misleading information, or conceals dishonorable military
 service; or conceals prior employment history or other requested
 information, either of which are significantly related to job

 -5-
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

 responsibilities on an application for State employment.”
 N.C.G.S. § 126-30(a).

 31. Dismissal is “mandatory” for any employee who
 “discloses false or misleading information in order to meet
 position qualifications.” N.C.G.S. § 126-30(a).

 32. The preponderance of evidence shows that Petitioner
 falsely claimed on the application that his only conviction prior to
 August 21, 2000 was for driving without a license.

 33. Petitioner admitted at hearing that, prior to August 21,
 2000, he had also been convicted of: assault on a female; carrying
 a concealed weapon; resisting a public officer; possession of drug
 paraphernalia; and larceny. . . .

 34. Pursuant to N.C.G.S. § 126-30(a), if Petitioner were still
 employed by FSU, his dismissal would have been mandatory.

 35. FSU provided substantial “after-acquired evidence”
 that bars Petitioner’s reinstatement, front pay, and significantly
 limits his back pay to the period between July 26, 2017, his
 discharge, to August 9, 2017, the date FSU discovered the
 falsification on his application.

The ALJ’s Final Decision then reversed the Final University Decision and ordered

that “Petitioner is barred from reinstatement and front pay . . . [and] his back-pay

shall be limited to the time between his discharge on July 26, 2017 and the discovery

of the ‘after acquired’ evidence on August 9, 2017.” Petitioner timely filed Notice of

Appeal from the ALJ’s Final Decision. See N.C. Gen. Stat. § 126-34.02(a) (2017)

 -6-
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

(allowing an aggrieved party to appeal the ALJ’s final decision to this Court, as

further provided under N.C. Gen. Stat. § 7A-29(a)). 2

 Issue

 The sole issue on appeal is whether the ALJ erred by applying the after-

acquired-evidence doctrine to Petitioner’s contested case under N.C. Gen. Stat. § 126-

34.02 and concluding Petitioner was barred from the remedies of reinstatement and

additional compensation.

 Standard of Review

 “ ‘It is well settled that in cases appealed from administrative tribunals,

questions of law receive de novo review, whereas fact-intensive issues such as

sufficiency of the evidence to support an agency’s decision are reviewed under the

whole-record test.’ ” Harris v. N.C. Dep’t of Pub. Safety, 252 N.C. App. 94, 99, 798

S.E.2d 127, 132 (quoting N.C. Dep’t of Env’t & Natural Res. v. Carroll, 358 N.C. 649,

659, 599 S.E.2d 888, 894-95 (2004)), aff’d per curiam, 370 N.C. 386, 808 S.E.2d 142-

43 (2017).

 “Where the petitioner alleges that the agency decision was based on error of

law, the reviewing court must examine the record de novo, as though the issue had

 2 Although the ALJ concluded “Petitioner may seek reasonable attorney’s fees proportionate
to his limited prevailing party status[,]” the ALJ did not decide the amount to be awarded to Petitioner;
however, the fact the ALJ left open the issue of the amount of attorney’s fees “does not alter the final
nature of the ALJ’s Final Decision for purposes of its appealability under N.C. Gen. Stat. § 7A-29(a).”
Ayers v. Currituck Cty. Dep’t of Soc. Servs., ___ N.C. App. ___, ___, 833 S.E.2d 649, 654 (2019) (citation
omitted).

 -7-
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

not yet been considered by the agency.” Blackburn v. N.C. Dep’t of Pub. Safety, 246

N.C. App. 196, 207, 784 S.E.2d 509, 518 (2016) (citation and quotation marks

omitted). As such, “[u]nder a de novo review, the court considers the matter anew

and freely substitutes its own judgment for that of the [ALJ].” Id. (alteration in

original) (citation and quotation marks omitted).

 On the other hand, “[u]nder the whole record test, the reviewing court must

examine all competent evidence to determine if there is substantial evidence to

support the administrative agency’s findings and conclusions.” Henderson v. N.C.

Dept. of Human Resources, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988) (citation

omitted). “When the trial court applies the whole record test, however, it may not

substitute its judgment for the agency’s as between two conflicting views, even

though it could reasonably have reached a different result had it reviewed the matter

de novo.” Carroll, 358 N.C. at 660, 599 S.E.2d at 895 (citation and quotation marks

omitted).

 Analysis

 Petitioner contends the trial court erred by applying the after-acquired-

evidence doctrine because the application of this doctrine to a career State employee

would “contravene the just cause statute and deny due process.” Specifically,

Petitioner asserts this doctrine is inapplicable to contested cases brought under N.C.

Gen. Stat. § 126-34.02 and that applying the doctrine in this case would violate

 -8-
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

Petitioner’s due process rights. In addition, Petitioner argues that even assuming

the after-acquired-evidence doctrine applies, the ALJ erred by concluding Petitioner’s

dismissal was “mandatory.” We address each of Petitioner’s contentions in turn

below.

 The United States Supreme Court first articulated the after-acquired-evidence

doctrine, or McKennon rule, in McKennon v. Nashville Banner Publishing Co., 513

U.S. 352, 130 L. Ed. 2d 852 (1995). In McKennon, the employee, McKennon, alleged

she was discharged by her employer in violation of the Age Discrimination in

Employment Act (ADEA). Id. at 354-55, 130 L. Ed. 2d at 859. While conducting a

deposition of McKennon during discovery, McKennon’s employer learned McKennon

had copied confidential company documents before her discharge, as McKennon

suspected she would be fired based on her age and wanted “insurance” and

“protection” against her employer. Id. at 355, 130 L. Ed. 2d at 859 (quotation marks

omitted). A few days after these deposition disclosures, McKennon’s employer sent

her a letter advising her that the “removal and copying of the records was in violation

of her job responsibilities[,]” informing her that she was terminated again, and

stating “had it known of McKennon’s misconduct it would have discharged her at once

for that reason.” Id. The Sixth Circuit Court of Appeals held this misconduct was

grounds for McKennon’s termination and affirmed the trial court’s granting of

summary judgment in favor of the employer. Id.

 -9-
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

 The Supreme Court reversed, concluding the after-acquired evidence of

McKennon removing and copying confidential company documents could not serve as

a valid justification for upholding the employee’s termination because the employer

did not know of McKennon’s misconduct until after she was discharged. Id. at 359-

60, 130 L. Ed. 2d at 862. Therefore, “[t]he employer could not have been motivated

by knowledge it did not have and it cannot now claim that the employee was fired for

the nondiscriminatory reason.” Id. at 360, 130 L. Ed. 2d at 862. Although the after-

acquired evidence of the employee’s misconduct could not bar the employee’s ADEA

claim, this type of evidence could be used to limit the employee’s relief. Id. at 361-62,

130 L. Ed. 2d at 863. Specifically, the Supreme Court in McKennon held: “as a general

rule in cases of this type, neither reinstatement nor front pay is an appropriate

remedy. It would be both inequitable and pointless to order the reinstatement of

someone the employer would have terminated, and will terminate, in any event and

upon lawful grounds.” Id. Rather, the McKennon Court limited the remedy of a

wrongfully discharged employee in such circumstances to backpay for the period

between the wrongful termination and discovery of the new information:

 Once an employer learns about employee wrongdoing that would
 lead to a legitimate discharge, we cannot require the employer to
 ignore the information, even if it is acquired during the course of
 discovery in a suit against the employer and even if the
 information might have gone undiscovered absent the suit. The
 beginning point in the trial court’s formulation of a remedy should
 be calculation of backpay from the date of the unlawful discharge
 to the date the new information was discovered. In determining

 - 10 -
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

 the appropriate order for relief, the court can consider taking into
 further account extraordinary equitable circumstances that affect
 the legitimate interests of either party.

Id. at 362, 130 L. Ed. 2d at 864.

 In Johnson v. Board of Trustees of Durham Technical Community College, this

Court adopted the McKennon rule to the plaintiff’s claim under the North Carolina

Persons with Disabilities Protection Act (NCPDPA), N.C. Gen. Stat. § 168A-1, et seq.

157 N.C. App. 38, 48, 577 S.E.2d 670, 676 (2003). The Johnson Court looked to the

common purposes and remedial provisions of the NCPDPA and the ADA, and after

noting the purposes and contents of the two statutes were consistent with one

another, our Court held the McKennon rule applies for determining the proper

remedy in NCPDPA cases involving after-acquired evidence of wrongdoing on the

part of the employee. Id. at 46-48, 577 S.E.2d at 674-76.

 Accordingly, the question presented here is whether the McKennon rule should

also apply to contested cases brought by career State employees. As our Court did in

Johnson, “we look to the provisions of the statute [governing career State employees]

to ensure that McKennon is consistent with its purpose and content.” Id. at 46, 577

S.E.2d at 674.

 Pursuant to Section 126-35 of our General Statutes, “[n]o career State

employee subject to the North Carolina Human Resources Act shall be discharged,

suspended, or demoted for disciplinary reasons, except for just cause.” N.C. Gen.

 - 11 -
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

Stat. § 126-35(a) (2017). Although Petitioner focuses on the purpose of the notice

requirements under Section 126-35, see infra, the overall statutory scheme of the

North Carolina Human Resources Act, which includes Section 126-35, is to ensure

employees are not arbitrarily or discriminatorily fired by their employer. See, e.g.,

N.C. Gen. Stat. § 126-34.02(b)(1)-(6) (allowing the ALJ to hear an employee’s claim

that the employee was wrongfully terminated based on, inter alia, discrimination or

harassment, retaliation, or a lack of just cause). Although the North Carolina Human

Resources Act protects a different class of employees than either the NCPDPA or the

ADA, all three acts are designed to guard against adverse employment action by

employers. See id. § 126-34.02(a)-(b) (allowing “an applicant for State employment,

a State employee, or former State employee” to file a contested case alleging their

adverse employment action was based on impermissible grounds); see also N.C. Gen.

Stat. § 168A-5(a)(1) (2017) (barring an employer from making an adverse employment

action based on the employee’s or applicant’s disability); 42 U.S.C.A. § 12112(a) (West

2013) (same under federal law). In addition, the ADA, NCPDPA, and the North

Carolina Human Resources Act all “contain similar remedial provisions, including

those for injunctive relief and back pay awards.” Johnson, 157 N.C. App. at 46, 577

S.E.2d at 674 (citing 42 U.S.C. § 2000e-5(g); then citing N.C. Gen. Stat. § 168A-11);

see also N.C. Gen. Stat. § 126-34.02(a)(1)-(3).

 - 12 -
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

 Further, Section 126-35 sets the benchmark for a state employer who desires

to terminate a career State employee. This Section “establishes a condition precedent

that must be fulfilled by the employer before disciplinary actions are taken.” Leiphart

v. N.C. School of the Arts, 80 N.C. App. 339, 350, 342 S.E.2d 914, 922 (1986) (citation

omitted). “The employer must provide the employee with a written statement

enumerating specific acts or reasons for the disciplinary action” before the action is

taken. Id. (citation omitted). As in Johnson, “[t]his is consistent with McKennon,

which focuses on the intent of the employer at the time of the alleged discriminatory

act.” 157 N.C. App. at 46, 577 S.E.2d at 675 (citing McKennon, 513 U.S. at 360, 130

L. Ed. 2d at 862). Accordingly, “[w]e find nothing in the purpose or content of the

[North Carolina Human Resources Act] that is inconsistent with or contrary to the

McKennon rule.” Id. Therefore, both Johnson and McKennon support the proposition

that the McKennon rule should be adopted to contested cases brought under N.C.

Gen. Stat. § 126-34.02.

 This does not end our inquiry, however, as Petitioner claims extending the

McKennon rule to this context violates a career State employee’s due process rights.

Specifically, Petitioner alleges by allowing the after-acquired evidence of Petitioner’s

misconduct—which Petitioner first learned of in Respondent’s Motion for Summary

Judgment before the ALJ—to limit Petitioner’s remedy, Petitioner was not given the

required notice and opportunity to be heard, thereby denying his due process rights.

 - 13 -
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

 Petitioner correctly notes a career State employee has a property interest in

continued employment, therefore requiring a state employer to comply with certain

procedural due process requirements before terminating employment. See Leiphart,

80 N.C. App. at 348-49, 342 S.E.2d at 921-22 (citations omitted). The North Carolina

Human Resources Act affords these obligatory protections by requiring, inter alia,

written notice to the employee stating the precise grounds for termination and by

providing an employee with the opportunity to be heard on why the adverse

employment action is not warranted. See N.C. Gen. Stat. §§ 126-35; -34.02. Our

Supreme Court has explained these statutory protections “fully comport[] with the

constitutional procedural due process requirements mandated by the Fourteenth

Amendment” of the United States Constitution. Peace v. Employment Sec. Comm’n,

349 N.C. 315, 327, 507 S.E.2d 272, 280 (1998).

 Adoption of the McKennon rule to contested cases brought by career State

employees, however, does not conflict with these due process protections. This is so

because after-acquired evidence of misconduct does not serve as a justification for the

termination.3 Rather, under the McKennon rule, this after-acquired evidence simply

limits the remedy of an employee who was wrongfully discharged. See Johnson, 157

N.C. App. at 48, 577 S.E.2d at 675 (explaining that “while ‘after-acquired’ evidence of

 3Indeed, if it did serve as a justification for termination, this would flout the purpose of the
North Carolina Human Resources Act’s statutory notice protections. See Leiphart, 80 N.C. App. at
351, 342 S.E.2d at 922 (Section 126-35(a) “was designed to prevent the employer from summarily
discharging an employee and then searching for justifiable reasons for the dismissal.”).

 - 14 -
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

employee misconduct could not bar an employer’s liability for discriminatory

discharge, such evidence may be relevant to determining the relief available to the

employee” (emphasis added) (citation omitted)). Therefore, the application of the

McKennon rule is not inconsistent with the statutory notice provisions mandated by

a career State employee’s due process rights. Further, this result is consistent with

N.C. Gen. Stat. § 126-34.02(a)(3), which grants the ALJ “express statutory authority

to ‘[d]irect other suitable action’ upon a finding that just cause does not exist for the

particular action taken by the agency.” Harris, 252 N.C. App. at 109, 798 S.E.2d at

138 (alteration in original) (quoting N.C. Gen. Stat. § 126-34.02(a)(3)).

 In any event, and on these facts, Petitioner was afforded sufficient notice to

comport with due process. Regarding the after-acquired evidence and Petitioner’s

notice thereof, the ALJ found that Respondent first disclosed this evidence in its

“Motion for Summary Judgment to bolster Respondent’s ‘just cause’ argument”;

Petitioner filed a Motion in Limine to exclude this evidence as support for Petitioner’s

termination, which Motion the trial court granted; after the ALJ concluded just cause

did not exist to terminate Petitioner, “Respondent was allowed to submit this ‘after

acquired’ evidence as Offers of Proof in the form of documentation and testimony”;

and “Petitioner cross-examined the witnesses on this documentation during

Respondent’s Offer of Proof.” Because Petitioner has not challenged these Findings

of Fact and because substantial evidence in the Record supports these Findings, they

 - 15 -
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

are binding on appeal. See id. at 108, 798 S.E.2d at 137 (citation omitted). These

Findings show Petitioner knew of Respondent’s intent to offer this evidence prior to

the hearing before the ALJ and that Petitioner was given the opportunity to cross-

examine the State’s witnesses on this evidence, thereby comporting with

constitutional procedural due process requirements. See Peace, 349 N.C. at 322, 507

S.E.2d at 278 (“The fundamental premise of procedural due process protection is

notice and the opportunity to be heard.” (citation omitted)).

 As discussed supra, the structure and content of the North Carolina Human

Resources Act are consistent with the application of the McKennon rule. Further,

application of this rule does not conflict with Petitioner’s due process rights under the

Act. Accordingly, we hold the McKennon rule applies in a contested case brought

under N.C. Gen. Stat. § 126-34.02 and that the ALJ did not err in applying this

doctrine to Petitioner’s contested case.

 Lastly, Petitioner contends even assuming the application of this doctrine was

appropriate, the ALJ erred by concluding Petitioner’s dismissal was “mandatory”

because “there was not sufficient evidence to show that Petitioner should have been

terminated[.]” Under Section 126-30(a) of our General Statutes, “[d]ismissal shall be

mandatory where the applicant discloses false or misleading information in order to

meet position qualifications.” N.C. Gen. Stat. § 126-30(a) (2017).

 - 16 -
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

 Here, the ALJ found that Petitioner’s 2000 job application listed his only

criminal conviction as driving without a license. However, at the hearing before the

ALJ, Petitioner admitted he had been previously convicted of carrying a concealed

weapon, possession of drug paraphernalia, resisting an officer, and larceny. When

asked whether he listed any of these convictions on his application, Petitioner

contended “[t]here was another sheet that should have been with [the application]

that had all that stuff on it.” Petitioner presented no additional evidence regarding

another sheet attached to his application. Based on this testimony, the ALJ found

Petitioner failed to “report[] these criminal convictions on his application.” The ALJ

also found, based on FSU’s Director of Facilities Operation’s testimony, that

Respondent would have terminated Petitioner immediately upon learning of

Petitioner’s inaccurate application. These Findings are supported by substantial

evidence in the Record and thus binding on appeal. See Harris, 252 N.C. App. at 108,

798 S.E.2d at 137 (explaining that as the ALJ is “the only tribunal with the ability to

hear testimony, observe witnesses, and weigh credibility[,] . . . we defer to the ALJ’s

findings of fact, even if evidence was presented to support contrary findings” (citation

omitted)). In turn, these Findings support the ALJ’s conclusion—“Pursuant to

N.C.G.S. § 126-30(a), if Petitioner were still employed by FSU, his dismissal would

have been mandatory.” Therefore, the ALJ did not err in applying the McKennon

rule, concluding Petitioner’s after-acquired evidence of misconduct would have

 - 17 -
 BROWN V. FAYETTEVILLE STATE UNIV.

 Opinion of the Court

warranted dismissal, and limiting Petitioner’s remedy to back pay from the time of

his discharge to the discovery of this after-acquired evidence.

 Conclusion

 Accordingly, for the foregoing reasons, we affirm the ALJ’s Final Decision.

 AFFIRMED.

 Judges ZACHARY and ARROWOOD concur.

 - 18 -